Barbara Carolyn FORBES, Appellee,

v.

SHELTER MUTUAL INSURANCE CO., a corporation, Defendant and Third Party Plaintiff,

v.

Gynette CATHEY, Appellant.

No. 84461.

Court of Appeals of Oklahoma, Division 3.

Sept. 12, 1995.

Beth C. Boggs, LaTourette, Schlueter & Byrne, P.C., St. Louis, for Appellant.

William C. Donovan, III, Tulsa, for Appellee.

## MEMORANDUM OPINION

ADAMS, Judge:

This is an appeal from a trial court summary adjudication order determining that the surviving spouse was entitled to all of the proceeds attributable to the wrongful death of one of the named insureds from two uninsured motorist insurance policies. The deceased insured's daughter appeals that order. Because the record presented to the trial court does not require, as a matter of law, the exclusion of the daughter from receiving any of those proceeds, we reverse and remand for additional proceedings.

### FACTS

Gilbert Raymond Forbes was killed instantaneously in an automobile accident in the State of Missouri when an uninsured driver negligently drove his vehicle in the wrong direction on a divided highway and hit the Forbes' vehicle. Mr. Forbes was survived by his wife, Barbara Carolyn Forbes (Wife), and Gynette Cathey (Daughter), his adult daughter from a previous marriage.

Wife filed a claim with the Forbes' automobile insurance carrier, Shelter Mutual Insurance Co. (Shelter), under two separate policies containing uninsured motorist (UM) coverage which totalled $100,000. Apparently, Daughter also claimed the right to receive payment under those policies, and Shelter paid neither.

Wife sued Shelter, alleging breach of contract and bad faith. Shelter joined Daughter as a third-party defendant and interpled the $100,000, admitting the entire amount was payable under the policies. Wife and Daughter agreed to dismiss Shelter and allow the court to determine who was entitled to the interpled funds.

Both Wife and Daughter filed motions for summary judgment. Wife contended she was entitled to all of the funds because she was a named insured and owner of the policy and the right to recover under UM coverage is a contractual right. According to Wife, the policies dictated payment of all amounts due to her, as the "surviving spouse." [1]

Daughter argued the contract did not necessarily control who was entitled to the policy proceeds. She argued that the funds should be allocated among all those entitled to recover damages for Mr. Forbes' wrongful death. Further, she argued that Missouri law should control the distribution of those proceeds. Because, according to Daughter, Missouri law mandated an equal distribution of those proceeds between a surviving spouse and children, Daughter requested the trial court to divide the interpled funds equally between both parties.

The trial court agreed with Wife. Accordingly, the trial court entered judgment for Wife, ordering that all of the interpled funds be paid to Wife.

### ANALYSIS

■ When a summary judgment is challenged, the appellate court must examine the pleadings, depositions, affidavits and other evidentiary materials submitted by the parties and consider all facts and inferences contained therein in the light most favorable to the party opposing summary judgment. *Redwine v. Baptist Medical Center of Oklahoma, Inc.*, 679 P.2d 1293 (Okla.1983). However, this record does not present a question of disputed fact for our consideration. Instead, the controversy between these parties

---

1. In Part IV, which was entitled "UNINSURED MOTORIST," each of the policies contains the following provision relating to payment of claims:

    PAYMENT OF LOSS BY US
    Any amount due is payable
      (1) to the **insured,** or
      (2) if the **insured** is a minor, to the parent or guardian, or
      (3) if the **insured** is deceased, then to the surviving **spouse,** otherwise
      (4) to a person authorized by law to receive the payment or a person legally entitled to recover the damages which the payment represents. **We** may at our option pay under this provision (4) any amount due.

turns on the question of whether, as a matter of law, Daughter may be legally entitled to any of the UM insurance proceeds.

■ Wife argues she is entitled to recover the UM proceeds as the insured, owner, and "surviving spouse" under the UM policies, citing *Bill Hodges Truck Co. Inc. v. Humphrey*, 704 P.2d 94 (Okla.App.1984) and *Uptegraft v. Home Insurance Company*, 662 P.2d 681 (Okla.1983), as authority. We agree that both *Hodges* and *Uptegraft* support the proposition that "[t]he right of an insured to recover under the uninsured motorist policy is a contractual right resting in the insured." However, the specific issue considered in *Hodges* and *Uptegraft* is not before us in this appeal. Shelter admitted Forbes was an "insured" under its policy, and, unlike the insurers in *Hodges* and *Uptegraft*, has never denied its liability to pay the UM policy limits.

Wife further argues that "as a condition of Shelter's promise, the beneficiary of the insurance contracts, . . . is 'legally entitled' to receive said proceeds." As she acknowledged, her argument is a paraphrase of the following passage from *Hodges*—"The actions of the tortfeasor are relevant only to establish that the insured is 'legally entitled to recover' from an uninsured motorist, a condition of the insurer's promise. 36 O.S. 1981 § 3636(B)." The phrase "legally entitled to recover" has been interpreted many times by the Court to simply mean that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to damages and prove the extent of those damages. *Uptegraft*, 662 P.2d at 685. As stated above, neither fault nor the amount of damages is at issue here.

Under the circumstances of this case, damages recovered under the uninsured motorist policies represent payments for the wrongful death of the insured. Under Oklahoma's UM statute, 36 O.S.1991 § 3636(B), uninsured motorist coverage is "[f]or the protection of persons insured thereunder who are legally entitled to recover *damages from owners or operators of uninsured motor vehicles* . . . because of bodily injury, sickness, or disease, including *death*, resulting therefrom." (Emphasis added).

■ The damages which § 3636(B) seeks to make certain are paid are those for which a negligent uninsured motorist is legally responsible, which in this case, would be damages for an insured's wrongful death. Because *Gleason v. City of Oklahoma City*, 666 P.2d 786 (Okla.App.1983) and *Gaither By and Through Chalfin v. City of Tulsa*, 664 P.2d 1026 (Okla.1983), hold that the only action available to survivors to obtain those damages is by virtue of a wrongful death action, Daughter argues the insurance proceeds paid pursuant to an insured's death caused by an uninsured motorist should be distributed to those individuals statutorily entitled to recover in a wrongful death action.

■ We must consider the legislative purpose behind Oklahoma's UM statute to resolve this issue. Because our UM statute is remedial and mandates the inclusion of UM coverage in motor vehicle insurance policies, it is to be liberally construed to accomplish the legislative purpose, that of providing coverage for injuries which would otherwise go uncompensated. *Simmons v. Hartford Accident & Indemnity Company*, 543 P.2d 1384, 1388 (Okla.1975).

This precise issue has never been addressed by Oklahoma appellate courts. However, in a different context, the Oklahoma Supreme Court recognized that, at least with regard to the damages recoverable, an action on a UM claim ought to be treated as an action for personal injuries. Considering an insurer's argument that prejudgment interest did not apply to damages under UM coverage, the Court stated in *Torres v. Kansas City Fire & Marine Insurance Co.*, 849 P.2d 407 (Okla.1993):

[a]lthough it is true the reason appellant is liable to pay monetary relief here at all is based on its contractually based duty to pay under the UM endorsement of the policy, the *damages it is required to pay under that policy are unquestionably by reason of personal injuries* . . . UM coverage is itself nothing less than coverage to provide monetary relief for bodily injury or death (i.e. by reason of personal injuries) to the extent the tortfeasor who is unin-

sured or underinsured ... is not in a position to pay the damages due the *victim.* 36 O.S.1981 § 3636 ... We believe, in that the tortfeasor would be liable for prejudgment interest the UM carrier is likewise liable therefore and a suit to recover for bodily injury or death against a UM carrier is one intended to be covered by § 727(A)(2) *because such a suit is in essence nothing other than a suit to recover for personal injuries.* (Emphasis added).

In this case, Shelter's liability to pay is also contractually based, and the damages it is required to pay under the uninsured motorist policies are by reason of Mr. Forbes' wrongful death. Because the uninsured motorist/tortfeasor would be liable to pay damages to those individuals who are legally permitted to recover damages pursuant to Oklahoma's wrongful death statute, 12 O.S.Supp.1993 § 1053(B), Shelter should likewise be liable to those same individuals.

Under § 1053(B), both Wife and Daughter are legally permitted, upon proper proof, to recover damages for Mr. Forbes' death "caused by the wrongful act or omission of another," *e.g.,* loss of consortium and the grief of the surviving spouse, pecuniary loss to the surviving spouse and children, and grief and loss of companionship of the children. In situations where the driver who wrongfully caused an insured's death is uninsured, it is very likely that the damages resulting from the insured's death and permitted by § 1053 to be recovered by the insured's survivors would go uncompensated.

■ We conclude that in the context of an insured's death by an uninsured negligent driver, UM insurance proceeds represent damages which may be recovered by those entitled by § 1053(B) to bring a wrongful death action regardless of what the insurance contract provides. Any other interpretation would not only disregard the legislative purpose behind § 3636 but also that of § 1053— to compensate *all* of decedent's survivors through a single cause of action. *Gleason,* 666 P.2d at 789.

■ This conclusion is also consistent with the insurance policies involved here. Wife's argument that the "PAYMENT OF LOSS BY US" provision mandates payment to her as the "surviving spouse" of a deceased "insured" overlooks other policy provisions.

Each policy contains a section of general definitions, wherein "**Insured** means the person, persons or organization defined as **insureds** in or with reference to the specific coverage or endorsement." (Emphasis in original). The specific endorsement relevant to this case is "Part IV—Uninsured Motorist," which provides, in pertinent part:

ADDITIONAL DEFINITIONS

As used in this Part,

(1) **Insured** means:

(a) **You** and any **relative;**

(b) Any other person while **occupying** an **insured auto;**

(c) Any person, with respect to damages he or she is entitled to recover because of **bodily injury** to which this Coverage applies sustained by an **insured** as defined in (a) and (b) above. (Emphasis in original).

Daughter is not a "relative" as that term is defined in the general definitions section of the policy which generally requires a relative to reside in the named insured's household and therefore is not covered by (a). Further, Daughter was not occupying the insured auto at the time of the collision and therefore is not covered by (b). However, Mr. Forbes was an insured as defined in (a) and Daughter is entitled to recover damages for Mr. Forbes' death under § 1053, upon proper proof. Therefore, Daughter is covered by (c), and she, as well as Wife, meets the definition of "insured" for purposes of Part IV of the policies, including the "PAYMENT OF LOSS BY US" provision.

■ Although Daughter may be entitled to a portion of the interpled funds, we cannot agree, at least on this record, that she is entitled to one-half of those proceeds as a matter of law. Daughter argues that Missouri's wrongful death statute should apply in this case instead of Oklahoma's. She also claims Missouri law would equally apportion (50%–50%) the UM insurance proceeds between Wife and Daughter according to the laws relating to descent and distribution.

Under Oklahoma's wrongful death statute, 12 O.S.1991 § 1053(D), the recovery is to be distributed by the trial court according to each claimant's loss.

Although the parties did not brief the specifics of the Missouri law extensively, our initial research raises the question of whether an equal apportionment is required under Missouri law.[2] If our initial research is correct, there may be no conflict between the Missouri law and Oklahoma provisions.

## CONCLUSION

Although the trial court should not have granted summary judgment to Wife because Daughter may be entitled, upon proper proof, to recover damages for the wrongful death of her father out of the interpled funds,

the trial court properly denied Daughter's motion requesting an equal division of those funds, as a matter of law. The trial court's judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

HUNTER, P.J., concurs.

HANSEN, J., dissents.

2. Missouri's equivalent of § 1053(B), V.A.M.S. § 537.080, provides that wrongful death damages may be sued for by the spouse or children. Missouri's equivalent of § 1053(D), V.A.M.S. § 537.095.3, provides that "In any action for damages under § 537.080, ... [t]he court shall then enter a judgment as to such damages, apportioning them among those persons entitled thereto in proportion to the losses suffered by each as determined by the court." Relying on § 537.095.3, the Missouri Court, in *Farr v. Schoeneman*, 702 S.W.2d 512 (Mo.App.E.D. 1985), determined the use of the laws of descent and distribution for apportionment applied only in cases with a guardian ad litem and did not apply where the widow and adult daughter were before the court in a wrongful death action arising out of an automobile collision.