**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 28 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOYCE BROWN PHILLIPS,

       Plaintiff-Appellant,

v.

NEW HAMPSHIRE INSURANCE
COMPANY, a corporation,

       Defendant-Appellee.

No. 00-6384

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 00-CV-349-M)**

---

Submitted on the briefs:

David W. Edmonds of Edmonds, Cole, Hargrave, Givens & Witzke, Oklahoma
City, Oklahoma for Plaintiff-Appellant.

William S. Leach and Michael F. Smith of Rhodes, Hieronymus, Jones, Tucker &
Gable, Tulsa, Oklahoma, for Defendant-Appellee.

---

Before **SEYMOUR** and **McKAY**, Circuit Judges, and **BRORBY**, Senior Circuit
Judge.

---

**SEYMOUR**, Circuit Judge.

Appellant Joyce Brown Phillips appeals from summary judgment granted in favor of appellee New Hampshire Insurance Company (NHIC) on her state-law breach of insurance contract and bad faith claims. Jurisdiction in federal court is based on diversity of the parties. *See* 28 U.S.C. § 1332. Ms. Phillips raises two issues on appeal: whether the district court erred in applying *Porter v. MFA Mutual Insurance Co.*, 643 P.2d 302 (Okla. 1982), and Okla. Stat. tit. 36, § 3636(E), to absolutely bar her claim for uninsured/underinsured motorist ("UM" and/or "UIM") insurance benefits against NHIC, and whether the court accordingly also erred in dismissing her bad faith claim. Our jurisdiction arises under 28 U.S.C. § 1291, and we reverse.[1]

**I.**

Because the district court sat in diversity, it was obliged to apply the most recent statement of applicable Oklahoma law by the state's highest court. *See Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994). On appeal, we utilize "the normal federal standards of appellate review to examine the district court's decision process." *Mid-America Pipeline Co. v. Lario Enters., Inc.*, 942 F.2d

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

1519, 1524 (10th Cir. 1991). Thus, we review the district court's grant of summary judgment de novo, applying Oklahoma law. *See Charter Canyon Treatment Ctr. v. Pool Co.*, 153 F.3d 1132, 1135 (10th Cir. 1998). Under Fed. R. Civ. P. 56(c), summary judgment is proper only if the evidence, viewed in the light most favorable to the party opposing summary judgment, shows that there are no genuine issues as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See id.*

The following facts are either undisputed or viewed in a light most favorable to Ms. Phillips. Ms. Phillips was injured in an automobile accident with Jimmy Boldien while she was driving her personal car in the course and scope of her employment. At the time, her employer had in force a commercial automobile liability and UM/UIM insurance policy with NHIC that expressly included employees as insureds. *See* Aplt. App. at 70, 141-42. After the accident, Ms. Phillips initiated suit against her employer for worker's compensation benefits and also pursued a claim against Mr. Boldien in state court.

In April 1998, through interrogatories to her employer in her worker's compensation suit, Ms. Phillips requested information about, and production of, any automobile insurance policies her employer had in force, but her employer did not respond to the interrogatory and did not produce the policy until October

1999, after settlement of the worker's compensation suit. *See id.* at 169-170, 175, 182-83. Ms. Phillips had settled her claim against Mr. Boldien for the liability limits of his automobile insurance policy on March 9, 1999. Because she did not know at the time whether her employer had a UM/UIM policy that covered her or who the carrier was, Ms. Phillips did not inform NHIC of Mr. Boldien's settlement offer. *Id.* at 170.

Ms. Phillips' damages exceeded Mr. Boldien's liability limits. Upon Ms. Phillips' further inquiry regarding UIM coverage, NHIC refused to pay her UIM claim, asserting that no UIM coverage existed except for the automobiles specifically described in the employer's policy, *id.* at 183, which did not include Ms. Phillip's personal automobile. Ms. Phillips brought suit against NHIC in state court, and NHIC removed the action to federal court.

NHIC then filed for summary judgment. Relying on *Porter*, the district court concluded as a matter of law that NHIC was entitled to judgment because Ms. Phillips' claim for UIM coverage was extinguished by her failure to give notice to NHIC of Mr. Boldien's settlement offer as required by section 3636(E). *Id.* at 262. The court also held that NHIC did not breach its duty of good faith by refusing to pay Ms. Phillips' claim because her failure to give notice of the settlement gave NHIC a reasonable basis for denying the claim. *Id.* at 263.

-4-

On appeal, we must first attempt to predict whether the Oklahoma Supreme Court would have applied the *Porter* waiver/forfeiture doctrine as a complete bar to Ms. Phillips' UIM claim based on a reading of that case and on subsequent Oklahoma law applying the doctrine. We next consider whether NHIC should be precluded from raising the *Porter* defense. Finally, we determine whether section 3636(E) requires the result reached by the district court.

## II.

### A. Application of the *Porter* doctrine.

The insured in *Porter* personally contracted for UM/UIM coverage under four separate policies with his insurance carrier. The policies contained a "[t]rust [a]greement" indicating "that in the event of payment by the insurer, the company becomes entitled to any proceeds of a settlement or judgment against the tort-feasor and that the insured shall hold in trust for the company any rights of recovery that he might have against the tort-feasor." *Porter*, 643 P.2d at 303. The policies further provided that the insured would "do nothing after loss to prejudice such rights." *Id.* n.4. After the injured insured realized that his demand for damages exceeded the tort-feasor's liability policy limits of $10,000, he put his insurer on notice of a possible UIM claim. He settled for the tort-feasor's policy limits, giving a general release of all claims to both the tort-feasor and the tort-feasor's insurance company. His insurer later refused to pay under the UIM

-5-

policies, contending the insured had forfeited his right to payment by destroying the insurer's contractual right to subrogation. *Id.* at 303.

On appeal, the insured claimed his insurer did not have a valid policy defense based on Oklahoma case authority prohibiting the type of subrogation claimed. *Id.* at 304. After noting that the line of cases on which the insured relied had been overruled, the court examined section 3636(E) of the Oklahoma UM statute to determine whether subrogation was statutorily permissible. *Id.* at 305.

The sentence examined by the court, which remains in effect today, provided:

> In the event of payment to any person under the [UM] coverage required by this section . . . the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made . . . .

*Id.* at 305 n.10. The court held that this sentence specifically allows a UM carrier to enforce its contractual subrogation rights against a third-party tort-feasor. *Id.* at 305. The "central question" then became "whether [the insured's] settlement *prejudiced* the rights of [the insurer]." *Id.* at 303 (emphasis added). Because the insured, "by *voluntarily and knowingly* making settlement with and giving a general release to [the tort-feasor], barred [the UIM carrier] from exercising its lawful right of recourse against the responsible party," in violation of the policy,

the court held he was precluded from bringing an action on the UIM policy. *Id.* at 305 (emphasis added).

In applying *Porter*, the district court held irrelevant the facts that Ms. Phillips was unable to obtain NHIC's identity prior to executing the settlement agreement and that Mr. Boldien was judgment-proof, and held immaterial the question whether NHIC was actually prejudiced by the release. Aplt. App. at 260-61 & n.1.

Section 3636(E) also provides:

> [I]f a tentative agreement to settle for liability limits has been reached with an insured tort-feasor, written notice shall be given by certified mail to the uninsured motorist carrier by its insured. . . .
> . . . .
> 2. . . .Within sixty (60) days of receipt of this written notice, the uninsured motorist coverage insurer may substitute its payment to the insured for the tentative settlement amount. The uninsured motorist coverage insurer shall then be entitled to the insured's right of recovery to the extent of such payment and any settlement under the uninsured motorist coverage. If the uninsured motorist coverage insurer fails to pay the insured the amount of the tentative tort settlement within sixty (60) days, the uninsured motorist coverage insurer has no right to the proceeds of any settlement or judgment, as provided herein, for any amount paid under the uninsured motorist coverage.[2]

The district court held that under *Porter* and this portion of section 3636(E), the "only material fact issue is whether [Ms. Phillips] provided the statutorily-required notice to [NHIC] upon reaching a tentative settlement agreement." Aplt.

---

[2] As amended in 1989.

App. at 261.  The district court thereby extended *Porter* to apply absolutely in situations in which the alleged insured was not aware of the existence of the policy or its terms at the time of settlement and the insurer had alleged no facts to establish actual prejudice.

We are not persuaded the Oklahoma Supreme Court would have reached this same result.  That court has an avowed "tendency to protect the insured's right to collect from the UM carrier."  *Burch v. Allstate Ins. Co.*, 977 P.2d 1057, 1061 n.14 (Okla. 1998).  The *Porter* court couched the key questions of the insured's right to recovery under his UIM contract in terms of waiver by the insured and prejudice to the insurer, considering these two factors in arriving at its conclusion that the "trust agreement" provisions should be enforced to bar the insured's recovery.  We address both *Porter* issues in turn.

**1. Waiver.**   Because the insurer's main argument in *Porter* was that the insured had waived or forfeited his right to payment, the primary consideration was whether the insured knew what he was doing at the time he signed the release. "Waiver is the voluntary and intentional relinquishment of a known right. The doctrine is essentially a matter of intention, focusing on the intent of the party against whom waiver is asserted."  *Barringer v. Baptist Healthcare of Okla.* 22 P.3d 695, 700-01 (Okla. 2001) (citation omitted); *cf. United Bhd. of Maint. of Way Employees & Ry. Shop Laborers v. Blair*, 282 P. 141, 143 (Okla. 1928)

("Forfeitures are looked upon by the courts with ill favor, and will be enforced only when the strict letter of the contract requires it.  On the question of forfeiture of a life insurance policy, which is so framed as to be fairly open to construction, the view should be adopted, if possible, which will sustain rather than forfeit the contract of insurance.") (quotation omitted).  The *Porter* court expressly determined that the insured signed the release with full knowledge that doing so was inconsistent with the rights of his insurer under their contract.  *Porter*, 643 P.2d at 305.[3]  Because the insurer's subrogation rights were actually prejudiced by this knowing conduct, the court precluded the insured's recovery.  *See id.* at 303, 305.

After *Porter*, in another case focusing on waiver/forfeiture and prejudice to the insurer, the Oklahoma Supreme Court held that a clause in a commercial UM

---

[3]    Every case cited in *Porter* for support of the general statement that an insured who deprives his insurer of its right of subrogation by settlement and release of the tortfeasor provides the insurer with a *complete* defense, *see id.* n.14, involved an insured who settled with full knowledge of the policy terms and the insurer's subrogation rights.  *See, e.g., Blocker v. Nat'l Discount Ins. Co.*, 493 P.2d 825, 826 (Okla. 1972); *State Farm Fire & Cas. Ins. Co. v. Farmers Ins. Exch.*, 489 P.2d 480, 481 (Okla. 1971) (insurer had paid claims and notified both insured and tort-feasor of its subrogation rights before settlement and release); *Geertz v. State Farm Fire & Cas.*, 451 P.2d 860, 862 (Or. 1969) (insured refused to allow insurer to subrogate even though contract provided for subrogation); *Jacobson v. State Farm Mut. Auto. Ins. Co.*, 491 P.2d 168, 170 (N.M. 1971) (insurer prepared to pay but insured refused to sign form that allowed insurer to subrogate, settled, and destroyed subrogation rights); *McNeill v. District-Realty Title Ins. Corp.*, 342 A.2d 55, 57 (D.C. 1975); *Hart v. State Farm Mut. Auto. Ins. Co.*, 248 N.W.2d 881, 882 (S.D. 1976).

insurance contract, which provided that the insurer was not obligated to pay if the action against the uninsured tort-feasor was barred by the statute of limitations, would not operate to bar the insured's UM recovery under the contract even though the insurer's subrogation rights had actually been defeated by the running of that statute of limitations. *Uptegraft v. Home Ins. Co.*, 662 P.2d 681, 685-86 (Okla. 1983). The court held that the clause contravened Art. 23, § 9 of the Oklahoma Constitution, which provides that contracts stipulating for notice or demand other than that provided by law as a condition precedent to establish liability are void. *Id.* at 686. Furthermore, because the insurer had not demanded that the insured protect its rights by suing the tort-feasor within the two-year tort statute of limitations, the court determined there was an absence of "affirmative acts or prejudicial conduct by the insured" that had operated to destroy the insurer's subrogation rights, and the insurer could therefore not invoke *Porter* to effect a discharge of its liability. *Id.* at 686-87 & n.12. Thus, the court held that even when prejudice to the insurer exists, if the insured did not knowingly and affirmatively cause the prejudice, the *Porter* doctrine would not bar the insured's recovery.

The court again declined to apply *Porter* in *Robertson v. United States Fidelity & Guaranty Co.*, 836 P.2d 1294 (Okla. 1992), in part on the basis of the insured's lack of knowledge. There, the insured had a liability policy with his

carrier that on its face did not include UM/UIM coverage.    *Id.* at 1296.  As Ms. Phillips had done, the insured settled with the tort-feasor and gave a release without notifying his carrier of the proposed settlement.  When the insured later discovered that, under the Oklahoma UM statutes, UM coverage would be statutorily imputed under the contract if his carrier had failed to offer him UM coverage and had not obtained a written rejection of that coverage, he made a claim under his policy.    *Id.* at 1295.  On summary judgment, the insurer successfully contended it was entitled to an absolute defense under    *Porter*  because of the settlement and release.    *Id.*  The Oklahoma Supreme Court reversed.  It held that an insurance company's failure to offer UM coverage constitutes a constructive denial that precludes raising a    *Porter*  defense.  *Id.* at 1296.  The court noted that the insured's ignorance of the existence of UM coverage at settlement may have been due to the insurer's failure to comply with its duty to inform him of the right to coverage.    *Id.*  at 1297.  It held that the insured's claims were not barred by the executed release.    *Id.*

In the current case, the district court distinguished    *Robertson*  because the insured there executed the release with an impression that none of his insurance policies included UM coverage, while Ms. Phillips executed the release before even obtaining NHIC's identity or a copy of the policy.  Aplt. App. at 261.  This seems to be a distinction without a difference.  Neither insured in either case knew

at the time the release was signed that he/she was impairing any prospective subrogation rights of his/her insurer. Thus, neither insured "voluntarily and knowingly" interfered with the insurer's contract rights as the insured in *Porter* had done.

In sum, being legally able to exercise subrogation rights is not the *sine qua non* of an obligation to pay a UM/UIM claim. At least four times the Oklahoma Supreme Court has held that even if the UM carrier is legally barred from exercising its subrogation rights against the tort-feasor, it must still pay its insured *unless* it would be unfair in light of the insured's knowing, affirmative, and prejudicial conduct. *See Torres v. Kan. City Fire & Marine Ins. Co.*, 849 P.2d 407, 413 (Okla. 1993); *Robertson*, 836 P.2d at 1297; *Barfield v. Barfield*, 742 P.2d 1107, 1112 (Okla. 1987); *Uptegraft*, 662 P.2d at 686-87. We hold that the waiver/forfeiture doctrine found in *Porter* does not bar Ms. Phillips' claims as a matter of law.

**2. Actual prejudice.** We also predict the Oklahoma Supreme Court would hold that NHIC may not rely on the *Porter* defense if it was not actually prejudiced by the signing of the release. [4] *Cf. Indep. Sch. Dist. No. 1 v. Jackson*, 608 P.2d

---

[4]    NHIC urges application of a Kansas case holding that a similar Kansas statute does not require the insurer to demonstrate prejudice from lack of adequate notice of settlement. *See Dalke v. Allstate Ins. Co.*, 935 P.2d 1067, 1069 (Kan. Ct. App. 1997). Because Oklahoma law sufficiently addresses the

(continued...)

1153, 1155 (Okla. 1980) (holding that when notice is condition in policy, "unless the insurer is prejudiced from the lack of notice, failure to give the insurer notice . . . will not relieve the insurer from liability" under the policy). As mentioned above, *Porter* stated that prejudice to the insurer was the ultimate inquiry when applying the waiver doctrine in cases in which a release has been knowingly given. 643 P.2d at 303. Actual, not just theoretical, prejudice is a necessary element of a *Porter* defense because only the insured's conduct that causes injury to the insurer can be unfair. *See Travelers Ins. Co. v. L.V. French Truck Serv., Inc.*, 770 P.2d 551, 555 (Okla. 1988) (noting that "[s]ubrogation is an equitable principle"). Consequently, because NHIC did not allege any undisputed facts to establish that it was actually injured by Ms. Phillips' conduct, it failed to satisfy its summary judgment burden.

---

[4](...continued)
issue of prejudice, we do not need to look to other states to resolve the question. Further, we note that Oklahoma protects the rights of insureds more vigorously than does Kansas. *Compare, e.g., id.* at 1070 (noting that Kansas upholds consent-to-settle clauses as basis for denying payment of UM claims) *with Porter*, 643 P.2d at 304 (holding that consent-to-settle clauses are void as against public policy because they chill settlements and dilute the UM statute's protection for injured victims). We also note that the *Dalke* court concluded that the insured's actions actually denied the insurer its subrogation rights, apparently because it was prepared to substitute the settlement payment, pay the UIM claim, and follow the statutory procedure to preserve its rights. 935 P.2d at 1071.

**B. Repudiation of the existence of a contract as a bar to raising the**

***Porter* doctrine.**

"Subrogation is a doctrine the law has devised for the benefit of one secondarily liable *who has paid* the debt of another." *Sexton v. Continental Cas. Co.*, 816 P.2d 1135, 1138 (Okla. 1991) (emphasis added). Ms. Phillips also argues that NHIC should be precluded from raising the *Porter* doctrine because of NHIC's refusal to pay and its stance that no applicable contract for UIM coverage exists. In *Sexton*, the Oklahoma Supreme Court applied an equitable doctrine to excuse knowing and prejudicial conduct by the insured that actually destroyed subrogation rights: the insurer's renunciation of the existence of an insurance contract with the insured. The court held that "when an insurer completely denies a claim for uninsured motorist (UM) coverage by its insured the insurer is estopped from later invoking the defense of loss of subrogation rights." *Id.* at 1135. The court explained that, when an insurer repudiates its contractual obligation to pay a UM claim by denying that a contractual relationship with an alleged insured even exists, its right to subrogation never arises, and the insurer cannot later "resurrect the insurance contract" and claim that its subrogation rights have been impaired by settlement with the tort-feasor. *Id.* at 1138-39.

The court extended *Sexton* in *Buzzard v. Farmers Insurance Co.*, 824 P.2d 1105, 1113-14 (Okla. 1991), to hold that an insurer's unjustified delay during

negotiations was equivalent to a denial and that the insurer's refusal to pay the UIM claim until settlement with the tort-feasor was reached (and a covenant not to sue was signed) precluded the insurer from relying on *Porter*. The court recognized that an insurer's conduct could lead an insured to believe that benefits would not be forfeited, estopping the insurer from denying benefits even if forfeiture could technically be claimed under the express terms of the insurance contract. *See id.* at 1113.

The district court distinguished *Sexton* and *Buzzard* by the fact that in those cases, the insureds had made claims for coverage *before* settlement and the insurers either denied coverage or delayed payment until settlement with the tort-feasor occurred. Aplt. App. at 260. We do not believe this distinction is consequential, however, because the Oklahoma Supreme Court did not find it to be fatal in *Robertson*, *supra*.

The *Robertson* insured did not (and indeed, could not) detrimentally rely on a denial of coverage in signing the release, as did the insureds in *Sexton* and *Buzzard*, and yet the court still barred the insurer from raising a *Porter* defense. *See Robertson*, 836 P.2d at 1297. Moreover, *Sexton's* rationale was based on the principle that an insurer who denies the existence of coverage under the contract on the one hand cannot resurrect the contract to claim an equitable defense on the other, and that subrogation rights arise only when payment has been made or the

insurer stands ready to pay pursuant to its UM/UIM contract. *See Sexton*, 816 P.2d at 1138.

The UM/UIM insurer must take prompt action to determine what payment is due if the insured's damages exceed the liability coverage available under the tort-feasor's policy. *See Buzzard*, 824 P.2d at 1112. Thus, in commercial/business policies that cover employees, the UM/UIM insurer may also have a concomitant duty to inform an injured employee-insured who may be ignorant of potential coverage and contract terms of its right to contractual or statutory subrogation if the insurer wishes to later elect to exercise that right. *See Uptegraft*, 662 P.2d at 687 n.11 (citing New Jersey case holding that if an insurance contract has a cooperation agreement, "the initial responsibility to act to protect subrogated rights rests upon the insurer. . . . [W]hen an insurer sits on these rights, it cannot be heard to complain."); *Sexton*, 816 P.2d at 1138 (noting the insurer's duty to "aid its insured in the preservation of its subrogation rights") (quotation omitted). At the very least, the insurer has a duty to promptly produce a policy on request to an injured employee with a colorable claim under the policy so that the employee may ascertain whether he is covered and what responsibilities he has under the contract.

NHIC does not assert that it was unaware of the accident until a claim was made on the policy, and it appears that the policy expressly covered at least "non-

ownership liability" for employees driving their own cars.    *See* Aplt. App. at 70, 141-42.  The policy required the employer to notify NHIC of accidents.    *Id.* at 78-79.  Thus, it is unlikely that the employer would have failed to notify NHIC of Ms. Phillips' accident, especially when Ms. Phillips requested identity of the carrier and the policies during the worker's compensation discovery process.

Even if Ms. Phillips had ascertained NHIC's identity, obtained a copy of the policy, made a claim for UM coverage, and given notice of settlement before signing the release, it is uncontroverted that NHIC would have denied the claim as not covered by the policy.  Subrogation rights would never have been an issue. We hold that because NHIC continued to completely deny the existence of UM coverage for Ms. Phillips after it learned of the settlement and release of the tortfeasor, it repudiated the existence of an applicable contract and cannot raise the *Porter* defense to bar Ms. Phillips' claim notwithstanding that its denial occurred after settlement rather than before.

## C. Application of Section 3636(E).

Our conclusion does not change upon review of Okla. Stat. tit. 36, § 3636(E).  "Because [the Oklahoma] UM statute is remedial and mandates the inclusion of UM coverage in motor vehicle insurance policies, it is to be liberally construed to accomplish the legislative purpose, that of providing coverage for

injuries which would otherwise go uncompensated." *Forbes v. Shelter Mut. Ins. Co.*, 904 P.2d 159, 162 (Okla. Ct. Civ. App. 1995) (citing *Simmons v. Hartford Acc. & Indem. Co.*, 543 P.2d 1384, 1388 (Okla.1975)). We first note that since section 3636(E) is expressly prefaced by the condition "[i]n the event of payment" of UM/UIM claims, it appears that section 3636(E) may have no application to the case at bar. Moreover, the section does not make an insured's failure to notify of proposed settlement an absolute bar to recovery under a UM/UIM policy. The central goal of section 3636 is to protect victims injured by uninsured or underinsured motorists (or by insured motorists whose carriers become insolvent) by ensuring payment of damages. *See Barnes v. Okla. Farm Bur. Mut. Ins. Co.*, 11 P.3d 162, 173 (Okla. 2001) (stating that clear intent of part of section 3636(E) was that payments made by a tort-feasor should not diminish injured party's recovery under their UM policy); *Porter*, 643 P.2d at 304-05 (refusing to enforce policy's consent-to-settle clause because it diluted the injured victim's protection under the UM statute); *Forbes*, 904 P.2d at 162.

One way it accomplishes that goal is by providing the speedy payment mechanism in section 3636(E) that is triggered by the insured giving notice of an impending settlement with the tort-feasor to the UM/UIM carrier. The last part of the section entitles the UM/UIM carrier that has paid a UM/UIM claim to prevent settlement by making a substitute payment of the tort-feasor's offer of settlement.

-18-

*See Barnes*, 11 P.3d at 168 (noting, "if the UIM carrier substitutes, the insured would not finally accept the tentative settlement because the UIM carrier would have substituted its payment for that offered by the tortfeasor"). The UM/UIM carrier may then force the tort-feasor to go to trial (or to a higher settlement) and take the insured's right of recovery to the extent of that substitute payment *plus* any payments already made under the UM/UIM policy. *See id.* ("[U]pon proper substitution, in addition to protecting its subrogation rights for any benefits *paid* under the UIM coverage, section 3636(E)(2) expressly provides that the UIM carrier is also entitled to any ultimate recovery . . . from the tortfeasor, to the extent of the payment made in substitution of the tentative settlement.") (emphasis added). Of course, as mentioned above, the only time taking such action would be profitable to the UM/UIM carrier is when the tort-feasor has assets beyond the liability limits (or settlement offer) of his insurance policy that may be collected after judgment.

The last sentence of section 3636(E)(2) bars the UM/UIM carrier from making *any* subrogation claims *notwithstanding any contractual agreement providing otherwise* if it has received written notice of the proposed settlement but has not offered a timely substitute payment to the insured *and* paid the UM claim as well. *See id.* at 169 (noting that UIM carrier waived its subrogation rights by deciding not to substitute payment and simply paying UIM claim); *Sexton*, 816

P.2d at 1138 (stating that subrogation is a right arising when one has paid the debt of another); section 3636(E)(2) (prefacing preservation of rights provisions with "in the event of payment" and providing for preservation of both substitute payment and UIM claims that have been paid). Oklahoma thus punishes a UM/UIM carrier (that has been given written notice fulfilling the statutory requirements) for refusing to quickly settle.

The purpose of the notice requirement is to trigger the speedy payment mechanism and to enable the insurer to protect any subrogation rights it may wish to preserve -- not to serve as a hurdle for recovery. *Cf. May v. Nat'l Union Fire Ins. Co.*, 918 P.2d 43, 48-49 (Okla. 1996) (stating that "once it appears that the legislative purpose of section 3636 has been served, the statute's mandate is satisfied" and refusing to go beyond statute's express mandates to impose a remedy for noncompliance with the statute). Nothing in this section indicates the legislature's intent to completely extinguish an insured's rights to UIM coverage as a matter of law if the insured has not complied with the notice of settlement provisions, [5] and we decline to read such a result into it in light of Oklahoma's

---

[5] Clearly, if a UM carrier does not have notice of proposed settlement as provided in this statute, this section would not operate to foreclose its contractual right to subrogation. Thus, if the district court had determined that Ms. Phillips' employer's UIM insurance covered Ms. Phillips, Ms. Phillips could not claim that NHIC's subrogation rights were foreclosed by any failure to make a substitute payment.

-20-

intent to protect the injured insured by this statute. We hold that section 3636(E) does not support summary judgment in favor of the insured under the circumstances of this case.

### D. Bad-faith claim.

Because the district court's grant of summary judgment on Ms. Phillips' bad-faith claim was predicated on its holdings that any entitlement to UIM proceeds was extinguished under *Porter*; that NHIC should not be precluded from raising the *Porter* defense; and that NHIC therefore had a justifiable reason for denying her claim, we accordingly also reverse summary judgment in favor of NHIC on this claim.

In sum, we **REVERSE** the judgment of the United States District Court for the Western District of Oklahoma and **REMAND** this case for further proceedings consistent with this opinion.