FILED
United States Court of Appeals
Tenth Circuit

February 10, 2022

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

VICKIE BROOKS,

    Plaintiff - Appellant,

v.

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,

    Defendant - Appellee.

No. 21-6052
(D.C. No. 5:18-CV-00603-G)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **MATHESON** and **PHILLIPS**, Circuit Judges.
_____

This appeal arises from the denial of a Rule 59 motion for reconsideration arising from the district court's entry of summary judgment on Philadelphia Indemnity's defense of non-coverage against an uninsured motorist claim. Vickie Brooks contends the court erred in applying Oklahoma and Tenth Circuit case law. We conclude that the district court correctly applied Oklahoma law. Ms. Brooks breached the Philadelphia policy by settling an automobile accident claim with two other insurance companies before notifying Philadelphia of personal injuries she suffered from the accident.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

Ms. Brooks was driving a company vehicle when an underinsured motorist hit her.[1]  The accident allegedly caused both damage to the vehicle and personal injury to Ms. Brooks.  At the scene of the accident, police created an accident collision report, which included the name of the insurer, Philadelphia, and Philadelphia's insurance policy number.  There is no indication that anyone but Ms. Brooks could have provided this information to the police, and the collision report was accessible to her at any time after the accident.  She did not report any personal injuries to police.

Ms. Brooks's employer then reported the accident to Philadelphia but did not claim any damages, either to the car or arising from Ms. Brooks's injuries.  Thus, Philadelphia had no way of knowing that any investigation was needed.  Ms. Brooks also reported the accident to the underinsured motorist's insurer, State Farm, and her personal insurer, AAA.

Ms. Brooks apparently then made a claim to AAA and State Farm for personal injuries.  She subsequently settled with AAA for $25,000 and State Farm for $50,000.  In doing so, she released all interested parties from liability.  This included anyone that Ms. Brooks knew had an interest in the claim, not just the parties to the contract.[2]

---

[1] The district court found that Ms. Brooks worked for Avalon Correctional Services, while Ms. Brooks states on appeal that her employer was First Enterprise Equipment.  Because the parties agree on the relevant insurance contract, this is not a material fact.

[2] Because we affirm for the same reasons as the district court, it is not necessary to consider whether Ms. Brooks's settlements separately destroyed Philadelphia's obligation to pay her claim.

Months later, Ms. Brooks's counsel sent a letter to Philadelphia asking for the policy, which included coverage for uninsured or underinsured motorists. When Ms. Brooks learned of the underinsured motorist coverage, she submitted a claim. Philadelphia did not respond to the claim.

Ms. Brooks then sued Philadelphia in the district court. Philadelphia moved for summary judgment on the basis that, under Oklahoma law, Ms. Brooks's settlements with AAA and State Farm obviated Philadelphia's duty to pay her claims, arguing the settlements destroyed its ability to seek contribution from the other insurance companies.

The district court granted summary judgment for Philadelphia, relying on an Oklahoma case holding that if an insured settles a claim without notice to his or her insurer, coverage is forfeited under the insurance contract. *See Porter v. MFA Mut. Ins. Co.*, 643 P.2d 302, 305 (Okla. 1982). Because Ms. Brooks entered into two settlements without notice to Philadelphia, the district court found that she had forfeited any claims under the policy. Thus, Philadelphia was not liable for any of Ms. Brooks's damages.

Ms. Brooks filed a motion for reconsideration in light of a Tenth Circuit case interpreting *Porter*: *Phillips v. New Hampshire Ins. Co.*, 263 F.3d 1215, 1222 (10th Cir. 2001). In *Phillips*, we held that "even if the UM carrier is legally barred from exercising its subrogation rights against the tort-feasor, it must still pay its insured *unless* it would be unfair in light of the insured's knowing, affirmative, and prejudicial conduct." *Id.* If an insured's settlement is made without knowledge of a potential conflict with the insured's policy, the insured does not forfeit coverage under the insurance contract. *Id.* Ms. Brooks argued that she was not specifically aware that the Philadelphia policy included

3

potentially applicable underinsured motorist coverage since she had never seen the policy. The district court found that this was not sufficient to make her settlements unknowing or involuntary under Phillips, and it denied her motion for reconsideration.

## ANALYSIS

Ms. Brooks argues that the district court erred by misinterpreting *Phillips*.[3] We agree with the district court in finding that *Phillips* does not apply to Ms. Brooks's case.

Under Oklahoma law,

> if an insured settles with and releases a wrongdoer from liability for a loss before payment of the loss has been made by the insurer, the insurer's right of subrogation against the wrongdoer is thereby destroyed. Also as a general rule an insured who deprives insurer, by settlement and release, of its right of subrogation against the wrongdoer thereby provides insurer with a complete defense to an action on the policy.

*Porter v. MFA Mut. Ins. Co.*, 643 P.2d 302, 305 (Okla. 1982) (footnotes omitted); *see also* Okla. Stat. tit. 36, § 3636(F)(1)-(2); *Brambl v. GEICO General Ins. Co.*, No. 10-CV-474-TCK-PJC, 2011 WL 5326076, at *2-3 (N.D. Okla. Nov. 4, 2011) ("[T]he insured's voluntary settlement with the tortfeasor destroys the UM carrier's subrogation rights and operates as a forfeiture of any UM Case coverage."). Thus, an insured who enters into a settlement with a tortfeasor, without notice to his own insurance company, forfeits any underinsured motorist coverage. By settling, the insured destroys the

---

[3] Ms. Brooks also argued that the district court improperly found that she had knowledge of the policy when she did not know the relevant policy provision. This argument simply reframes Ms. Brooks's argument under *Phillips*. Both turn on whether specific and actual notice is required. Because Ms. Brooks's *Phillips* argument fails, her argument that the district court improperly found an essential fact also fails.

insurer's right of subrogation, or ability to sue in the shoes of the insured.[4]  Under *Porter*,

because Ms. Brooks entered into two settlements with the tortfeasor's insurers and did

not give notice to Philadelphia, she forfeited her claims under the Philadelphia policy.

But in *Phillips v. New Hampshire Insurance Co.*, 263 F.3d 1215, 1222 (10th Cir.

2001), we identified an exception to the *Porter* rule that settlement without notice voids

an insurer's duty to pay.  There, the insured did not know whether her employer had an

insurance policy on the vehicle.  Nonetheless, she requested production of any

automobile insurance policies that the employer had.  The employer did not respond to

her interrogatories, and it failed to produce the insurance agreement until seven months

after the insured had already entered into a settlement agreement.

In *Phillips*, we held that an insured who was not able to obtain information,

despite her best efforts, about whether the vehicle was insured or which insurance

company covered the vehicle was not bound by *Porter*.  *Id.* (defining a "knowing"

insured as one who "knew at the time the release was signed that he/she was impairing

any prospective subrogation rights of his/her insurer").  Only after Phillips had already

---

⁴ Ms. Brooks also contends there was no prejudice to Philadelphia due to the destruction of its subrogation rights.  She cites *Phillips* for this argument.  In *Phillips*, the tortfeasor was judgment-proof, so the court noted that even if the insured had given notice, there was no indication that the insurance company could have collected.  But Oklahoma courts have presumed that a tortfeasor has some assets, unless that presumption is contested or rebutted.  *See, e.g.*, *Porter v. MFA Mut. Ins. Co.*, 643 P.2d 302, 305 (Okla. 1982) (finding that barring the insurer "from exercising its lawful right of recourse" against the tortfeasor prejudices the insurer, without discussion of whether the tortfeasor had any assets).  Here, there is no argument that the tortfeasor is judgment-proof.  Thus, it was not error to find that Philadelphia was prejudiced by its inability to sue.

settled did her employer finally respond that the vehicle was insured. *Id.* ("Ms. Phillips executed the release before even obtaining NHIC's identity or a copy of the policy."). Because Phillips had no way of finding out whether the vehicle had insurance coverage, the *Phillips* court found that her settlement could not have been a knowing and voluntary breach of her notice obligation. Further, she had no way of providing the insurance company with notice of the settlement, as required by Oklahoma law. Thus, she did not forfeit her insurance coverage when she settled with the tortfeasor before she could have possibly known about the existence of the insurance policy.

Ms. Brooks entered into two settlement agreements without notice to Philadelphia. Under *Porter*, this negates Philadelphia's duty to pay her claim. 643 P.2d at 305. Ms. Brooks argues her settlements fall under the *Phillips* exception, since she did not have actual notice of the underinsured motorist coverage. The district court found that Ms. Brooks was aware of the policy's existence: The Collision Report was generated from an investigation made at the scene and identified Philadelphia as the insurer of Ms. Brooks's work vehicle. She thus had actual notice of a potentially applicable insurance policy. Ms. Brooks, moreover, does not deny that she had actual knowledge of the identity of the insurer, Philadelphia, and the policy number. She argues instead that she was not aware of the "details." App. Br. at 9.

Ms. Brooks could have obtained the policy provisions by contacting Philadelphia—which her counsel eventually did. She claims her initial failure to obtain this information makes her settlements unknowing under the logic of *Phillips*. We disagree. In *Phillips*, the insured used her best efforts but was not able to obtain her

policy in the face of recalcitrance by her employer. We emphasized that the insured "requested information about, and production of, any automobile insurance policies her employer had in force, but her employer did not respond [until after the settlement]." *Phillips*, 263 F.3d at 1218.

Here, Ms. Brooks knew of the policy but did not procure and read its provisions until after the settlements. Ms. Brooks could have obtained the specific information by reaching out to Philadelphia, as her counsel eventually did. Ms. Brooks, unlike Phillips, could have obtained all the necessary information with a modicum of due diligence. Thus, her settlement was knowing and voluntary as explained in *Phillips*. Ms. Brooks does not fall under an exception to the general rule that her settlement voids Philadelphia's duty to pay.

For the reasons stated above, the district court correctly denied Ms. Brooks's motion to reconsider. Thus, we AFFIRM the decision of the district court.

Entered for the Court

Timothy M. Tymkovich
Chief Judge

21-6052, *Brooks v. Philadelphia Indemnity Insurance Company*
**PHILLIPS**, J. dissenting.

Philadelphia had two required showings to meet its summary-judgment burden: (1) that Ms. Brooks "knowingly and voluntarily" destroyed Philadelphia's subrogation rights with a settlement and release, and (2) that the release "actually prejudiced" Philadelphia. On the first point, I note that Philadelphia hasn't maintained that Ms. Brooks knew that her employer's automobile policy contained underinsured-motorist ("UM") coverage for her. As the majority notes, "[w]hen Ms. Brooks learned of the underinsured motorist coverage, she submitted a claim." Maj. Op. at 3. By then, she had settled and issued general releases. On the second point, Philadelphia hasn't argued that it would have pursued the negligent driver or her insurer for subrogation—a minimum requirement to show actual (as opposed to theoretical) prejudice. For these reasons, as elaborated on below, I respectfully dissent.

## I.    "Knowing and Voluntary"

In *Porter v. MFA Mutual Insurance Co.*, 643 P.2d 302, 305 (Okla. 1982), the Oklahoma Supreme Court stated the "general rule" that "an insured who deprives [an] insurer, by settlement and release, of its right of subrogation against the wrongdoer thereby provides [the] insurer with a complete defense to an action on the policy." Because Mr. Porter settled and released "the responsible party" (the negligent driver who injured him) from further liability before notifying his insurer (which covered UM benefits), he prevented his insurer "from exercising its lawful right of recourse against the responsible party[.]" *Id.* So the court held that Mr. Porter "was thereby precluded from

bringing action on the uninsured motorist policies." *Id.* Importantly, Mr. Porter's knowledge of the UM coverage as contained in his policy was undisputed—he had earlier notified his insurer that he might make an UM claim on his policy. *Id.* at 303.

In *Phillips v. New Hampshire Insurance Co.*, 263 F.3d 1215 (10th Cir. 2001), we applied *Porter*'s general rule to the facts of *Phillips*—we didn't create an "exception" to *Porter*'s general rule as the majority says. *See* Maj. Op. at 5. Unlike in *Porter*, the claimant in *Phillips* didn't know whether her employer had an insurance policy that covered her for UM benefits. *Phillips*, 263 F.3d at 1218. Trying to find out, she filed suit and served interrogatories asking about any such insurance. *Id.* In response, her employer stalled for eighteen months before answering the interrogatory and providing the insurance policy. *See id.* By then, the claimant had settled with the tortfeasor and provided a release. *Id.* In this circumstance, we held that she had not "knowingly and voluntarily" destroyed the insurer's subrogation rights. *Id.* at 1223.

The majority relies on these two cases to support its holding that Ms. Brooks "knowingly and voluntarily" destroyed Philadelphia's subrogation rights despite her not knowing that the policy contained UM coverage. It does so by pointing to information that was available to her in the police report from the traffic accident. The report identified Philadelphia as the insurer of her employer's automobile and listed the insurance-policy number. But neither *Porter* nor *Phillips* treats constructive knowledge of an insurance policy as the equivalent of actual knowledge. How can a claimant who doesn't know whether a policy provides her UM coverage knowingly and voluntarily

2

destroy subrogation for UM-coverage payments?[1] Also noteworthy, to get to constructive knowledge, the majority speculates that "a modicum of due diligence" would have revealed to Ms. Brooks the presence of UM coverage. *See* Maj. Op. at 7. But we should remember that Philadelphia took months to produce the policy after the claimant asserted a claim for UM benefits. *See id.* And we should remember that on summary judgment, the non-movant gets the benefit of the doubt on disputed facts.

Further, the majority fails to acknowledge *Phillips*'s language saying that "in commercial/business policies that cover employees, the UM/UIM insurer may also have a concomitant duty to inform an injured employee-insured who may be ignorant of potential coverage and contract terms of its right to contractual or statutory subrogation if the insurer wishes to later elect to exercise that right." 263 F.3d at 1224 (citing *Sexton v. Cont'l Cas. Ins.*, 816 P.2d 1135, 1138 (Okla. 1991), which notes that an insurer has a

---

[1] I also disagree with the district court's handling of Philadelphia's summary-judgment burden. The district court stated that "while Plaintiff's brief argues that Defendant's status as a UM carrier was not known to Plaintiff at the time she signed her release, this argument is not supported by affidavit or deposition testimony or any other evidentiary material permitted under Rule 56." But Rule 56 doesn't require Ms. Brooks to file such materials until Philadelphia had introduced admissible evidence that she knew about the UM coverage. It didn't do so. Under our precedent, the summary-judgment burden shifts to the non-movant only once the movant meets its initial burden of establishing no material disputes of fact. *See Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002); *see also Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir. 1984) ("Where the moving party fails to meet its strict burden of proof, summary judgment cannot be entered even if the opposing party fails to respond to the motion."). But here, Philadelphia failed to meet its burden of showing that Ms. Brooks had actual knowledge, so no affidavit from Ms. Brooks was needed.

duty to "aid its insured in the preservation of its subrogation rights").[2] Here, Philadelphia knew that Ms. Brooks had been involved in an accident on an interstate highway in which another car had spun into the driver's side of her car and spun it too. The accident was serious, and clearly more than a parallel-parking mishap or some such. Yet Philadelphia made no attempt to inform Ms. Brooks of Philadelphia's UM coverage or any interest it might have in pursuing subrogation against the negligent driver.

Additionally, the majority fails to credit Oklahoma's stated public policy underlying its UM laws. As we noted in *Phillips*, "[b]ecause [the Oklahoma] UM statute is remedial and mandates the inclusion of UM coverage in motor vehicle insurance policies, it is to be liberally construed to accomplish the legislative purpose, that of providing coverage for injuries which would otherwise go uncompensated." 263 F.3d at 1224 (quoting *Forbes v. Shelter Mut. Ins. Co.*, 904 P.2d 159, 162 (Okla. Civ. App. 1995)). And as further stated in *Phillips*, "[t]he central goal of [Okla. Stat. Ann. tit. 36 § 3636, Uninsured Motorist Coverage] is to protect victims injured by uninsured or underinsured motorists (or by insured motorists whose carriers become insolvent) by ensuring payment of damages." *Id.* (citing *Barnes v. Okla. Farm Bur. Mut. Ins. Co.*, 11 P.3d 162, 173 (Okla. 2000)). Those policies don't square with the majority's new constructive-knowledge rule.

---

[2] The court next notes that "*[a]t the very least*, the insurer has a duty to promptly produce a policy on request to an injured employee with a colorable claim under the policy so that the employee may ascertain whether he is covered and what responsibilities he has under the contract." *Phillips*, 263 F.3d at 1224 (emphasis added).

II.    "Actual Prejudice"

The district court committed another error requiring reversal of its summary-judgment order. Philadelphia didn't offer evidence that it was "actually prejudiced" by Ms. Brooks's releases. In *Phillips*, we predicted that "the Oklahoma Supreme Court would hold that [the UM insurer] may not rely on the *Porter* defense if it was not actually prejudiced by the signing of the release." 263 F.3d at 1222. We concluded that "[a]ctual, not just theoretical, prejudice is a necessary element of a *Porter* defense because only the insured's conduct that causes injury to the insurer can be unfair." *Id.* at 1223. And that "because [the UM insurer] did not allege any undisputed facts to establish that it was actually injured by Ms. Phillips' conduct, it failed to satisfy its summary judgment burden." *Id.*

At the least, to meet its summary-judgment burden on actual prejudice, Philadelphia needed to show that it would have pursued the tortfeasor (the negligent driver) for whatever UM benefits it eventually decided to pay Ms. Brooks.[3] *See Porter*,

---

[3] *See also State Farm Mut. Auto. Ins. Co. v. Green*, 89 P.3d 97, 104 (Utah 2003) ("In order to show actual prejudice, it is not sufficient for an insurer to show that its right of subrogation has been extinguished. Rather, the insurer may deny coverage only if it would have had a realistic possibility of recovering from the tortfeasor had its subrogation right not been foreclosed by the insured's settlement with the tortfeasor. This requires an assessment of factors such as the assets held by the tortfeasor, the strength of the insurer's subrogation claim (i.e., the strength of the underlying tort claim), the expenses and risks of litigating the insured's cause of action, and the extent of the victim's damage."); *Hasper v. Center Mut. Ins. Co.*, 723 N.W.2d 409, 416 (N.D. 2006) (same); *Gibson v. State Farm Mut. Auto. Ins. Co.*, 704 N.E.2d 1, 6 (Ohio Ct. App. 1997) (relevant factors include "the amount of assets held by the tortfeasor, the likelihood of recovery via subrogation, and the expenses and risks of litigating the insured's cause of action"); *Kapadia v. Preferred Risk Mut. Ins. Co.*, 418 N.W.2d 848, 852 (Iowa 1988)

5

643 P.2d at 305 (tying loss of subrogation rights to the claimant's release of "a wrongdoer," "the responsible party," "the tortfeasor," and "Sheltman"—the named negligent driver in that case). As *Phillips* notes, "the only time taking such action [seeking subrogation from a tortfeasor] would be profitable to the UM/UIM carrier is when the tort-feasor has assets beyond the liability limits (or settlement offer) of his insurance policy that may be collected after judgment." *Id.* at 1225. Philadelphia made no showing on summary judgment that the negligent driver who injured Ms. Brooks had collectable assets worth its time and money to pursue.

Addressing the collectability piece of "actual prejudice," the majority recognizes that *Phillips* found a lack of actual prejudice to the insurer because the "tortfeasor was judgment-proof, so . . . even if the insured had given notice, there was no indication that the insurance company would have collected." Maj. Op. at 5 n.4. But then, in my view, the majority takes a wrong turn—it contends that "Oklahoma courts have presumed that a tortfeasor has some assets, unless that presumption is contested or rebutted," and concludes that Brooks failed to rebut this presumption. *Id.* But neither Philadelphia nor the majority offers support for this "presumption," and *Phillips* says otherwise. *See* 263 F.3d at 1223 (in discussing actual prejudice, the court stated that "because [the insurer] did not allege any undisputed facts *to establish* that it was actually injured by Ms. Phillips' conduct, *it failed to satisfy its summary judgment burden*." (emphases added)).

_____

(insurer must demonstrate actual prejudice by showing it could have collected from tortfeasor under subrogation clause).

6

Moreover, Philadelphia didn't avail itself of any such "presumption" in its summary-judgment motion or appellate briefing.

As mentioned, the "actual prejudice"-collectability question pertains to the tortfeasor, not the tortfeasor's insurance company that has already paid policy limits on the claim. *See* Op. Br. at 3 ("Ms. Brooks settled with the adverse driver's carrier, State Farm, for his $50,000 liability limits[.]"); *see also Chandler v. State Farm Auto. Ins. Co.*, 598 F.3d 1115, 1119 (9th Cir. 2010) ("The court then acknowledged that an insurer's obligation runs . . . only to the extent of the policy limits." (cleaned up)).

Nor is the majority correct to point to the collectability of any payments made to Ms. Brooks by her own insurer, AAA. Once more, the UM insurer's subrogation right applies only against the tortfeasor. *See Porter*, 643 P.2d at 305 (subrogation rights only apply to the tortfeasor); *see also Chandler*, 598 F.3d at 1117 ("Subrogation is an equitable doctrine that permits an insurance company to assert the rights and remedies of an insured against a third party tortfeasor."); *Aviation & Gen. Ins. Co., Ltd. v. United States*, 882 F.3d 1088, 1102 (Fed. Cir. 2018) (Reyna, J., concurring) ("It is well established that subrogation is a common law doctrine based in equity that permits an insurer to take the place of the insured to pursue recovery from third-party tortfeasors responsible for the insured's loss."). And to show actual prejudice, Philadelphia must have shown that it would have pursued the tortfeasor had its subrogation rights not been compromised, which it simply didn't do here. *See State Farm*, 89 P.3d at 104 (actual prejudice requires more than subrogation being extinguished—"the insurer may deny coverage only if it would have had a realistic possibility of recovering from the tortfeasor

7

had its subrogation right not been foreclosed by the insured's settlement with the tortfeasor.").

So as a second ground on which the district court should have denied summary judgment, I rely on Philadelphia's failure to meet its burden to show actual prejudice.