Carl Phillip FREY, III, Gayla D. Frey; and Traci Frey, a minor, By and Through her father and next friend, Carl Phillip Frey, III, Appellants,

v.

The INDEPENDENCE FIRE AND CASUALTY COMPANY, an Oklahoma Insurance Corporation, Appellee.

No. 59091.

Supreme Court of Oklahoma.

April 2, 1985.

As Corrected April 2, 1985.

Jim W. Lee, Lee, Beuch & Davis, Oklahoma City, for appellants.

Rex K. Travis, Oklahoma City, for appellee.

OPALA, Justice.

Certiorari presents two questions: (1) Did the insured timely raise the issue whether the insurer, because of its denial of the insured's claims, was precluded, by waiver or estoppel, from relying on the insured's breach of the so-called trust agreement clause of his uninsured motorist coverage? and (2) Did the insured's "covenant not to sue", given the tortfeasor before suit was brought under the uninsured motorist coverage, destroy the insurer's subrogation rights and hence bar recovery under the doctrine announced in *Porter v. MFA Mutual Ins. Co.?* [1] *We answer the first question in the negative and the second in the affirmative.*

The insured, his wife and child were injured in a car accident with an underinsured tortfeasor. After accepting the tortfeasor's settlement offer, the insured executed a "covenant not to sue". Because the settlement is said not to have covered the total amount of his claims, the insured brought an action against his insurer to recover under the uninsured motorist coverage. The insurer moved for summary judgment, contending that the insured's breach of the policy's so-called trust agreement—by execution of a covenant not to sue the tortfeasor—had destroyed the in-

surer's subrogation rights. The insured filed *neither a response nor objections* to the motion. The trial court rendered summary judgment for the insurer. This appeal was then brought by the insured who was successful in the Court of Appeals. Certiorari was granted on insurer's petition.

The estoppel theory was first injected into the case when the insured attached several letters to his brief-in-chief on appeal. One of the letters was from the insured to the insurer. In it he advised the insurer of the tortfeasor's settlement offer. Another letter was the insurer's reply in which it denied liability and refused to participate in any settlement negotiations. The decision of the Court of Appeals doubtless was rested on the evidentiary material attached to the insured's brief. The appellate opinion here under review appears to hold that (1) the insurer must suffer the loss, as a matter of law, because the letter-attachments reveal the insurer's refusal to participate in the settlement with the tortfeasor and (2) the "covenant not to sue" was not a "general release" and hence the suit was not barred by the *Porter* doctrine.

On certiorari insurer argues that: (1) because the estoppel issue, relied on by the Court of Appeals, was raised for the first time on appeal, its consideration was improper; (2) the Court of Appeals dealt with an issue not previously decided by this court, i.e., whether a covenant not to sue the tortfeasor, without reserving any rights to the insurer, destroys the insurer's subrogation claim; and (3) whether the Court of Appeals decided the case contrary to *Porter.* We granted certiorari and now affirm the trial court's judgment.

I

### TIMELINESS OF THE INSURED'S ESTOPPEL THEORY AS AN ISSUE ON APPEAL

The insurer contends that the insured's theory of estoppel or waiver was not raised

---

1. Okl., 643 P.2d 302, 305 [1982]. In *Porter* we held that an insured who destroys the insurer's subrogation rights—by settlement with and general release of the wrongdoer—effects a discharge of the insurer from liability under the uninsured motorist coverage.

below nor were the "facts" relied on in the appellate opinion a part of the evidentiary material before the trial court when summary judgment was rendered. In response, the insured asserts that the appellate court did not consider extraneous materials and, furthermore, that the Court of Appeals relied on the *Porter* doctrine in reaching its conclusion.

 After summary judgment is granted, the objecting party cannot on appeal rely on any fact or evidentiary material that was not before the trial court at the time of its rendition.[2] The ruling on a motion for summary judgment must be rested on the record which is then before the court rather than on one that could have been assembled.[3] Similarly, the reviewing court is always limited to the issues actually presented below, as reflected by the record.[4]

 The insured presented below *no* defense to the insurer's quest for summary judgment. No reply was filed in which estoppel was plead. Nor did the insured submit below any evidentiary material— such as the later-proferred letter-exhibits— which could have qualified for incorporation into the appellate record. The insured cannot supplement the record on appeal by injecting into it material that was not before the trial court at the judgment stage.[5]

Neither may an appellate pronouncement serve as a means of supplying a deficiency in the record tendered for review.[6] In short, there can be no post-decisional amendment of the record to include material that was not timely admitted or properly pressed for incorporation at the trial level.[7]

Because estoppel clearly was not raised here as an issue below and hence is not now available as a viable theory on certiorari, we must once again leave unsettled[8] the question whether an insurer's prior denial of the insured's uninsured motorist coverage claim may operate to estop that insurer from later invoking the *Porter* doctrine's protection against destruction of its subrogation rights. We save for another day the task of solving that problem.

## II

## THE EFFECT OF COVENANT NOT TO SUE ON INSURER'S SUBROGATION RIGHTS

The insurer contends that the insured's settlement with the tortfeasor and execution of the covenant not to sue destroyed its subrogation rights and barred recovery under the uninsured motorist coverage. The insured argues that the covenant not to sue is not a general release but is more akin to a partial release and therefore does

2. Rule 13, Rules for District Courts of Oklahoma, 12 O.S. 1981, Ch. 2, App., before its amendment, effective November 1, 1984, 55 OBJ 2242, 2245, provided in part:
"* * * b. Within ten days after receipt of notice of the filing of the motion the adverse party or parties may file an objection to the granting of the motion to which he may attach affidavits and other materials containing facts that would be admissible in evidence, but the adverse party cannot rely on the allegations or denials in his pleading.... If the motion for judgment is granted, the party or parties filing the objection cannot on appeal rely on any fact or material that is not referred to or included in the objection in order to show that a substantial controversy exists. * * *"

3. *Ross v. City of Shawnee,* Okl., 683 P.2d 535 [1984]; *RST Service Manufacturing, Inc. v. Musselwhite,* Okl., 628 P.2d 366, 368 [1981]; *Wabaunsee v. Harris,* Okl., 610 P.2d 782, 784 [1980]; *Culpepper v. Lloyd,* Okl., 583 P.2d 500, 502

[1978]; *Weeks v. Wedgewood Village Inc.,* Okl., 554 P.2d 780, 784 [1976]; *Northrip v. Montgomery Ward & Co.,* Okl., 529 P.2d 489, 494 [1974].

4. *Northrip v. Montgomery Ward & Co., supra* note 3; *Ajax Contractors, Inc. v. Myatt,* Okl., 424 P.2d 30, 35 [1967]; *McGhee v. McAllister,* Okl., 474 P.2d 940 [1970]; *Board of County Com'rs of Choctaw Co. v. Schuessler,* Okl., 358 P.2d 830, 832 [1961].

5. *State ex rel. Dept. of Highways v. Lehman,* Okl., 462 P.2d 649, 650 [1969]; *In re Hess' Estate,* Okl., 379 P.2d 851, 859 [1963].

6. *Owens v. Luckett,* 192 Okl. 685, 139 P.2d 806, 807 [1943].

7. *Eckel v. Adair,* Okl., [55 OBJ 2474, Sup.Ct. No. 59, 201, November 27, 1984].

8. *Uptegraft v. Home Ins. Co.,* Okl., 662 P.2d 681, 686 [1983].

not discharge the insurer from its liability under the policy. Both parties rely on the *Porter* doctrine to support their positions.

The terms of 36 O.S. 1981 § 3636(E),[9] as well as the so-called insurer's trust agreement[10] included in the insured's policy, provide in specific language that the insurer shall have a subrogation claim. The insurer's right to be subrogated is derived from, and limited to, the tort claim of the insured. If the insured releases the wrongdoer from liability, the insurer's subrogation rights may be viewed, with some exceptions not applicable here, as having been destroyed. This is so because the insured no longer has a tort claim against the wrongdoer to which subrogation may be effected.[11] In *Porter* we held that the insured's general release of the wrongdoer produces two consequences: (1) the insurer's subrogation rights are destroyed; and (2) the insurer's liability under the uninsured motorist coverage of the policy is discharged. We also noted in *Porter* that the insured's execution of a partial release, which would reserve to the insurer any rights it may have against the wrongdoer, would not discharge the insurer's liability.

■ Although technically there may be a difference between a covenant not to sue and a general release, the result *in this case* is the same under both forms of acquittance. No further recovery is possible from the wrongdoer because he no longer can be sued. The form of acquittance that is chosen may become significant when liability is sought to be cast on several joint tortfeasors. A general release of *one among several* joint tortfeasors operates to release from liability *all of them*. In contrast, a covenant not to sue will only release the one to whom it is given.[12]

■ The covenant not to sue, executed by the insured in this case, released the single tortfeasor from *all* liability. It reserved no rights to the insurer.[13] Its

9. The terms of 36 O.S. 1981 § 3636(E) provide: "In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer. Provided, however, with respect to payments made by reason of the coverage described in subsection (C) above, the insurer making such payment shall not be entitled to any right of recovery against such tort-feasor in excess of the proceeds recovered from the assets of the insolvent insurer of said tort-feasor. Provided further, that any payment made by the insured tort-feasor shall not reduce or be a credit against the total liability limits as provided in the insured's own uninsured motorist coverage.

10. Part IV, Section VI(H) of the insured's uninsured motorist coverage provides: "Trust Agreement. In the event of payment to any person under this insurance: (a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made."

11. *Porter v. MFA Mutual Insurance Co., supra* note 1; *Great American Insurance Co. v. Watts,* Okl., 393 P.2d 236, 240 [1964]; *Commercial Union Fire Insurance v. Kelly,* Okl., 389 P.2d 641, 644 [1964]; Annot. 92 A.L.R.2d 102.

12. For example, if A & B are joint tortfeasors and C gives A a general release, B will automatically be released from liability. If C gives A a general release, which includes a reservation of his rights against B, the release operates, in its effect, as a covenant not to sue A.
*Brown v. Brown,* Okl., 410 P.2d 52, 56 [1966]; *Hambright v. City of Cleveland,* Okl., 360 P.2d 493, 496 [1961]; *Dodson v. Continental Supply Co.,* 175 Okl. 587, 53 P.2d 582 [1936]; *All American Bus Lines v. Saxon,* 197 Okl. 395, 172 P.2d 424, 428 [1946]; *Harn v. Interstate Bldg. and Loan Co.,* 77 Okl. 265, 188 P. 343, 345–346 [1920]; Annot. 53 A.L.R. 1420.

13. The relevant provisions of the document titled "covenant not to sue" follow:
"* * * the undersigned ... hereby covenant and agree that the undersigned shall forever refrain from instituting or prosecuting any claim, demand, action or cause of action ... on account of any injuries and/or damages of any sort, costs, loss of services and expenses resulting to the undersigned from or in any way growing out of an accident, casualty or event which occurred on or about the 27th day of July, 1979 ...

legal effect was hence identical to that of a general release. Had more than one tort-feasor been responsible for the insured's injuries, the distinction in the forms of release may have become significant. That is not the case before us. The bottom line here is that, as a result of the insured's acts, the insurer's subrogation rights came to an end. Under the *Porter* doctrine, the insurer did have a complete defense to the recovery sought against it. Summary judgment for the insurer is hence free from legal error.[14]

The Court of Appeals' opinion is vacated and the trial court's summary judgment affirmed.

SIMMS, C.J., DOOLIN, V.C.J., and HODGES, LAVENDER, HARGRAVE, KAUGER and SUMMERS, JJ., concur.

WILSON, J., concurs in result.

\* \* \* \* \* \*
The undersigned do specifically reserve all their rights to make claims for damages and/or collections under contract arising by reason of said accident against any and every other person, firm or corporation not a party to this agreement. \* \* \*"

**14.** *In Keel v. MFA Insurance Co.*, Okl., 553 P.2d 153 [1976], we invalidated the so-called "con-sent-to-sue" clause in the UM coverage of the policy—a provision not implicated in this case. The court stated in *Keel* that *proper and timely notice to the insurer of the insured's intent to file suit against the uninsured motorist is all that the insurer may require in lieu of a consent to sue.* *Keel* is entirely consistent with *Porter* and with the conclusion reached here today.