Frederick L. ROBERTSON and Debra
Robertson, Appellants,

v.

UNITED STATES FIDELITY & GUAR-
ANTY COMPANY and the Western
Casualty & Surety Company, Appellees.

No. 69279.

Supreme Court of Oklahoma.

July 14, 1992.

Rehearing Denied Sept. 15, 1992.

Rex K. Travis, Oklahoma City, for appellants.

Donald R. Wilson, Oklahoma City, for appellee, U.S. Fidelity & Guar. Co.

Charles F. Alden, III, Oklahoma City, for appellee, Western Cas. & Sur. Co.

LAVENDER, Justice.

The question presented is whether an insurance company is estopped from asserting loss of subrogation as a defense when it fails to offer and obtain a written rejection of uninsured/underinsured insurance coverage (UM) from the insured. We answer affirmatively.

## FACTS

Frederick Robertson (Appellant) was injured in an automobile accident with an underinsured motorist (Stabel) in September 1984. The Robertsons had insurance policies with United States Fidelity & Guaranties (USF & G) and Western Casualty & Surety Company (Western). These policies

did not include on their face uninsured/underinsured (UM) coverage.[1]

Stabel's insurance company offered the Robertsons the limit of its policy's coverage and requested a release. The Robertsons consulted an attorney and were told that because their policies did not contain UM coverage, they should probably accept Stabel's insurance company's offer. Appellants accepted payment and signed a release.

The Robertsons consulted a second attorney who told them that if their insurance companies had failed to offer them uninsured motorist coverage and had not obtained a written rejection from the Robertsons, their policies contained UM coverage as a matter of law. Given this information, Appellants filed suit.

USF & G and Western filed motions for summary judgment contending that even if the Robertsons had UM coverage, their settlement with Stabel destroyed the insurance companies' right to subrogation and was a complete defense for the insurance companies. Alternatively, USF & G claimed that the Robertsons never had UM coverage and produced a written rejection signed by its agent purportedly with the Robertsons' authorization.

The trial court granted the insurance companies summary judgment. The Robertsons appealed and the Court of Appeals reversed and remanded. We previously granted certiorari.

## I.

The insurance companies argued the case was controlled by *Porter v. MFA Mutual Ins. Co.*[2] In *Porter* we held that the execution of a settlement and release of the tortfeasor which destroys the insurer's right of subrogation was a complete defense to a suit on the policy for UM coverage. We recognized that where,

> an insured settles with and releases a wrongdoer from liability for a loss before payment of the loss has been made by the insurer, the insurer's right of subrogation against the wrongdoer is thereby destroyed. Also as a rule an insured who deprives insurer, by settlement and release, of its right of subrogation against the wrongdoer thereby provides insurer with a complete defense to an action on the policy. [The insured], by voluntarily and knowingly making settlement with and giving a release to [the wrongdoer, bars the insurer] from exercising its lawful right of recourse against the responsible party, and the [insured is] thereby precluded from bringing an action on the uninsured motorist policies.[3]

Later, in *Frey v. Independence Fire & Casualty Co.*[4] we extended the *Porter* holding to include that a covenant not to sue given by the insured likewise precludes suit against the insurer for UM coverage. We did note in *Frey* that a question remained as to "whether an insurer's prior denial of the insured's uninsured motorist coverage claim may operate to estop that insurer from later invoking the *Porter* doctrine's protection against destruction of its subrogation rights."[5]

However, in *Sexton v. Continental Casualty Co.*,[6] we were confronted with just that issue and we held that "when an insurer completely denies a claim for uninsured motorist (UM) coverage by its insured the insurer is estopped from later invoking the defense of loss of subrogation rights."[7]

1. "The intent of the uninsured motorist legislation is to afford to one insured under his own liability insurance policy the same protection in the event he is injured by an uninsured motorist as he would have had if the negligent motorist had carried liability insurance." *Moser v. Liberty Mut. Ins. Co.*, 731 P.2d 406, 408 (Okla.1986).

2. 643 P.2d 302 (Okla.1982).

3. *Porter*, 643 P.2d at 305.

4. 698 P.2d 17 (Okla.1985).

5. *Id.* at 20.

6. 816 P.2d 1135 (Okla.1991).

7. *Id. See Stephens v. State Farm Mutual Automobile Insurance Company*, 508 F.2d 1363, 1366 (5th Cir.1975) wherein the court stated:

> The rationale behind holding to this particular waiver theory [where a claim by the insurance company has been denied] is that a claimant should not be required to approach his insurer, hat in hand, and request consent

In a later case, *Buzzard v. Farmers Ins. Co.*,[8] we extended the *Sexton* holding to include an insurance company's unjustified delay during negotiations as equivalent to a denial and that a company's refusal to pay the claim until a settlement was reached precludes the insurance company from relying on *Porter* or *Frey*.

In *Sexton* and *Buzzard,* however, claims for UM coverage were presented to the insurance company. The injured party settled with the wrongdoer *because* either UM coverage was denied or payment delayed until such settlement occurred. Upon settling, the insurance companies raised destruction of its subrogation rights as a defense and we held that the *Porter/Frey* doctrine did not apply in those situations.

■ Our case falls between *Sexton* and *Buzzard.* The Robertsons did not have a claim that was denied or delayed because no claim was ever filed. However, the Robertsons did not file a claim because they did not know they had a right to file one in that the policies did not include UM coverage. The Robertsons contend that because of this nonoffer, the companies have waived the *Porter* defense or in the alternative, should be estopped from asserting it in that failure to meet the statutory requirements constitutes a constructive denial. We agree that an insurance company's nonoffer and failure to obtain a written rejection of UM coverage constitute a constructive denial such as would preclude raising a *Porter/Frey* defense.

Oklahoma law requires an offer[9] by the insurance company and the acceptance or *written* rejection by the insured of UM coverage. In *Moon v. Guarantee Ins. Co.*,[10] this court, quoting *Keel v. MFA Ins. Co.*,[11] stated:

> The uninsured motorist statute requires that each liability policy must provide uninsured motorist coverage, unless the insured rejects it in writing.
>
> . . . .
>
> The literal import of the statute leaves no doubt. It directs no automobile policy shall issue in this state unless it offers coverage for payment within specified limits of what an uninsured motorist would be liable for to an insured for damages for bodily injuries. Every policy must offer the coverage, unless rejected in writing.

The Keel rationale, above, dictates that the only way a 'policy' may be said to 'offer uninsured motorist coverage is by the terms of such language as appears within the written provisions of the policy. This conclusion is consistent with the legislative intent favoring inclusion of uninsured motorist coverage, as acknowledged by this Court in *Chambers v. Walker,* 653 P.2d 931, 935 (Okla.1982); and it is further consistent as the legal corollary or mirror image of the subse-

---

to settle with another when he has already been told, in essence, that the insurer is not concerned, and he is to go his way. It is difficult to see why an insurer should be allowed, on the one hand, to deny liability and thus, in the eyes of the insured, breach his contract and, at the same time, on the other hand, be allowed to insist that the insured honor all his contractual commitments. When the denied liability does not, in fact, exist, no harm can be done the insurer by the insured's settlement with a third party. When the denied liability does exist (as may be later adjudicated), admittedly the subrogation rights of the insurer could be compromised by settlement. However, in the case of existent, denied liability, the denial is a breach of contract on the part of the insurer and its breach should, by rights, relieve the insured of the punitive effects of his failure to comply with consent provisions of the insurance policy.

**8.** 824 P.2d 1105, 1113–14 (Okla.1991).

**9.** *See* however, *Silver v. Slusher,* 770 P.2d 878 (Okla.1988) cert. denied, *Silver v. Farmers & Merchants Ins. Co.,* 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989) wherein we stated:

> Because § 3636 contains no language which alters the basic, arms' length nature of the insured-insurer relationship, *we decline to read into the UM statute a duty charging insurers with the responsibility of detailed and formalistic explanation as an indispensable precondition for securing from the named insured a statutorily effective rejection of uninsured motorist coverage.*

**10.** 764 P.2d 1331, 1334–35 (Okla.1988).

**11.** 553 P.2d 153, 155 (Okla.1976).

quent statutory directive for written rejection, as set forth in Subsection (F) of 36 O.S. 1981 § 3636:

(F) The named insured shall have the right to reject such uninsured motorist coverage *in writing,* and except that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer.

Accordingly, uninsured motorist coverage is required to be offered by written provision within or supplemental to an original policy, (and if not so "offered," then this is written into the policy by operation of law), and must likewise thereafter be waived by *written rejection.* Thus, the burden of proof is upon the insurer to come forward with a written rejection in order to relieve the insurer from its duty to provide the statutory uninsured motorist coverage.

The Robertsons testified in their depositions that they had not been offered uninsured motorist coverage, nor had they executed a written rejection of such coverage. Indeed, neither policy contained language that would constitute an offer for UM coverage as statutorily mandated. Although, USF & G maintained the Robertsons had executed a written rejection of UM coverage, the company admitted that one of its agents had signed the rejection purportedly with the Robertsons' authorization. Western presented no evidence of a written rejection.

With these facts in mind, we consider the Robertsons actions. The Robertsons executed the release with the impression that neither policy included uninsured motorist coverage. Yet, by law, they had uninsured motorist coverage of at least the minimum amount [12] under the Western policy and conceivably, USF & G, unless, Appellants authorized USF & G to sign the rejection as their authorized agent.

We find that consistent with our recent line of cases, an insurance company who does not offer UM coverage and obtain a written rejection from its insured, may not subsequently raise in a later suit by the insured to recover UM benefits, the *Porter/Frey* defense where an insured has settled, ignorant of the insurance company's failure to comply with its statutory duty under § 3636. For us to hold otherwise would frustrate the purpose of the statute, which is to require insurance companies to offer UM coverage, and would permit the insurance companies to benefit from their own noncompliance with the law.

■ If it is true, as the Robertsons allege, that the insurance companies' failure to perform their statutory duty resulted in their signing the release, then there was a constructive denial of the claim and the insurance company is estopped to raise the Robertsons' settlement in this action to recover UM coverage. In that there was at least a material fact issue as to whether USF & G was authorized by the Robertsons to sign a written rejection of the insurance, summary judgment [13] was improperly granted.

## CONCLUSION

We hold that the Robertsons' claims are not barred because of the release they executed and that USF & G and Western were not entitled to summary judgment. The order of the trial court is REVERSED and this case is REMANDED to the trial court

---

**12.** *See Mann v. Farmers Ins. Co.,* 761 P.2d 460, 464 (Okla.1988).

Under the construction adopted by the trial court, failure of the insurer to obtain a written rejection as to the highest available limits would result in those limits being written into the uninsured motorist provisions of the insured's policy. This would result in the insured being placed in the position as though an uninsured motorist, with whom the insured was involved in an accident, had purchased the same liability policy as that purchased by the insured. As found in *Moser* this result goes beyond the mandate of 36 O.S. 1981 § 3636.

**13.** Rule 13, Rules of the District Court, 12 O.S. 1991 Ch. 2, App.

for further proceedings consistent with the views expressed in this opinion.

All Justices concur.