OSCN Found Document:RAYMOND v. TAYLOR

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 RAYMOND v. TAYLOR
2017 OK 80
Case Number: 113894
Decided: 10/10/2017
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2017 OK 80, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

VONDA RAYMOND, GUARDIAN OF MARK RAYMOND, an incapacitated adult, Plaintiff/Appellant,
v.
TAMI TAYLOR, individually and as Personal Representative of the Estate of WILLIAM COLE TAYLOR, deceased, and on behalf of the wrongful death beneficiaries, Plaintiff/Intervenor
v.
LARRY BEDELL, an individual, and BLUEKNIGHT ENERGY PARTNERS, L.P., a foreign corporation, Defendants,
v.
COMPSOURCE OKLAHOMA, Intervenor,
and
AMERICAN MERCURY INSURANCE COMPANY, Intervenor/Appellee.

ON CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION III

¶0 Appellant, Mark Raymond, brought an action against tort-feasors. Appellee, American Mercury Insurance Company, the uninsured motorist insurance carrier, filed a motion to intervene for subrogation from the tort-feasors of the uninsured motorist payments. Appellant settled with tort-feasors for a confidential amount inclusive of Appellee's disputed subrogation claim. The district court ordered that the UM insurance carrier was entitled to full subrogation under 36 O.S.Supp. 2009, § 3636. The Court of Civil Appeals affirmed. This Court granted certiorari.

COURT OF CIVIL APPEALS' OPINION VACATED; JUDGMENT OF
DISTRICT COURT REVERSED; CAUSE REMANDED WITH INSTRUCTIONS.

Donald E. Smolen, II and Laura L. Hamilton, Smolen, Smolen & Roytman, PLLC, Tulsa, OK, for Appellant.
James D. Johnson and Randall E. Long, Rhodes, Hieronymus, Jones, Tucker & Gable, P.L.L.C., Tulsa, OK, for Appellee.

WATT, J.: 

¶1 The question presented is whether the uninsured motorist insurance carrier is entitled to subrogation against the under-insured tort-feasor's assets, including excess insurance coverage, in the amount the uninsured motorist insurance carrier had previously paid to the injured party. We answer in the negative.

FACTUAL AND PROCEDURAL HISTORY

¶2 This case originated with a motor vehicle accident on July 6, 2012. William Cole Taylor (Taylor) was driving a vehicle owned and insured by Guy's Seed Company (Guy's Seed); Appellant, Mark Raymond (Raymond), was a passenger in the vehicle driven by Taylor. Both Raymond and Taylor were employees of Guy's Seed. Appellee, American Mercury Insurance Company (Mercury), issued a commercial automobile insurance policy to Guy's Seed which provided uninsured/under-insured motorist (UM) coverage of $1,000,000 per accident.

¶3 Larry Bedell (Bedell) was an employee of BlueKnight Energy Partners (BlueKnight); BlueKnight carried a $1,000,000 primary automobile liability policy and a $40,000,000 excess liability policy. Bedell was driving an oil tanker truck, owned by BlueKnight, and attempted to turn in front of the Guy's Seed vehicle causing a collision. The collision caused an immediate explosion, which resulted in Taylor's death and Raymond suffering significant permanent injuries.

¶4 Raymond qualified as insured under Mercury's UM coverage[1] and the UM claim was reported to Mercury on July 9, 2012. On July 12, 2012, Raymond filed a petition against Defendants, Bedell and BlueKnight, in Woodward County District Court. On September 4, 2012, Defendants filed their Answer.[2] Meanwhile, Mercury investigated and offered the UM policy limits to Raymond's and Taylor's representatives, paying $500,000 to each on September 24, 2012. On November 20, 2012, an agreed order of transfer to Woodward County was granted.

¶5 On December 3, 2012, Mercury filed a motion to intervene for subrogation from Defendants for the $500,000 payment made to Raymond from the UM policy. On December 18, 2012, Mercury's motion to intervene was granted. The case was mediated in late August 2013 with BlueKnight, Raymond, and Mercury present.

¶6 Raymond disputed Mercury's right to subrogation in this action, but Defendants refused to settle unless the settlement amount was inclusive of Mercury's disputed subrogation claim. An agreement was reached where Raymond settled with Defendants for a confidential amount greater than the primary insurance liability limits but less than the excess policy;[3] Defendants paid Raymond the amount of the settlement minus the $500,000 claimed by Mercury. The disputed $500,000 was to be held until there was an agreement or court order as to who was entitled to the funds.

¶7 On September 30, 2013, Mercury filed a motion to determine allocation of settlement funds. On August 29, 2014, the District Court granted Mercury's motion, finding that Mercury was entitled to the right of subrogation for the full $500,000. On April 6, 2015, the District Court dismissed the case, making the order of allocation of settlement funds final and ripe for appeal.

¶8 Raymond timely appealed and the matter was assigned to the Oklahoma Court of Civil Appeals (COCA), Division III. Raymond argued that the district court erred in finding Mercury had a valid subrogation interest in the proceeds of Raymond's settlement with Defendants. On September 30, 2016, COCA affirmed the District Court's order. Raymond timely filed a Petition for Certiorari which this Court granted on March 6, 2017.

STANDARD OF REVIEW

¶9 Statutory interpretation is a question of law and is subject to de novo review. Head v. McCracken, 2004 OK 84, ¶ 4, 102 P.3d 670, 674, Fulsom v. Fulsom, 2003 OK 96, ¶ 2, 81 P.3d 652, 654. We review the determination that Mercury was entitled to subrogation of the $500,000 paid under the UM policy by de novo standard as the meaning of Title 36, Section 3636 is central to determining Mercury's right to subrogation. De novo review is a "non-deferential, plenary[, ]and independent review of the trial court's legal ruling." Head, 2004 OK 84, ¶ 4, 102 P.3d at 674.

ANALYSIS

¶10 Title 36, Section 3636 of the Oklahoma statutes provides regulations for uninsured motorist insurance coverage and makes it mandatory as an option for all automotive insurance policies. 36 O.S.Supp. 2009, § 3636(A),(B).[4] For purposes of UM coverage protection, the term "uninsured motor vehicle" also includes insured vehicles where the liability limits are less than the amount of the claim of the person making a claim, otherwise known as under-insured vehicles. 36 O.S.Supp. 2009, § 3636(C). Any excess or umbrella policy is not included when determining the liability limits of a vehicle under Section 3636(C). GEICO General Ins.Co. v. Northwestern Pacific Indemnity Co., 2005 OK 40, ¶¶ 0, 13, 22, 115 P.3d 856, 857, 859, 860.

¶11 Mercury seeks subrogation of the UM funds it paid to Raymond under Title 36, Section 3636(F):

In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer. Provided, however, with respect to payments made by reason of the coverage described in subsection C of this section, the insurer making such payment shall not be entitled to any right of recovery against such tort-feasor in excess of the proceeds recovered from the assets of the insolvent insurer of said tort-feasor. Provided further, that any payment made by the insured tort-feasor shall not reduce or be a credit against the total liability limits as provided in the insured's own uninsured motorist coverage. Provided further, that if a tentative agreement to settle for liability limits has been reached with an insured tort-feasor, written notice shall be given by certified mail to the uninsured motorist coverage insurer by its insured.
Such written notice shall include:

1. Written documentation of pecuniary losses incurred, including copies of all medical bills; and
2. Written authorization or a court order to obtain reports from all employers and medical providers. Within sixty (60) days of receipt of this written notice, the uninsured motorist coverage insurer may substitute its payment to the insured for the tentative settlement amount. The uninsured motorist coverage insurer shall then be entitled to the insured's right of recovery to the extent of such payment and any settlement under the uninsured motorist coverage. If the uninsured motorist coverage insurer fails to pay the insured the amount of the tentative tort settlement within sixty (60) days, the uninsured motorist coverage insurer has no right to the proceeds of any settlement or judgment, as provided herein, for any amount paid under the uninsured motorist coverage.

36 O.S.Supp. 2009, § 3636(F) (emphasis and underline added). Mercury primarily points to the first sentence of this section as providing the right to subrogation.

¶12 When a statute is unambiguous, its language will be applied without further inquiry as to its meaning. Ball v. Multiple Injury Tr. Fund, 2015 OK 64, ¶ 6, 360 P.3d 499, 502. But if a literal construction leads to a conflict with other provisions within a statute, this Court will reconcile the provisions using rules of statutory construction. Id. The primary goal of statutory interpretation is to ascertain and, if possible, give effect to the intention and purpose of the Oklahoma Legislature as expressed by the statutory language. Cattlemen's Steakhouse, Inc. v. Waldenville, 2013 OK 95, ¶ 14, 318 P.3d 1105, 1109. In determining the Legislature's intent, the court looks "to each part of an act, to other statutes upon the same or relative subjects, to the evils and mischiefs to be remedied, and to the natural and absurd consequences of any particular interpretation." Blevins v. W.A. Graham Co., 1919 OK 147, ¶ 8, 182 P. 247, 248. This Court has stated that the intent of UM legislation is to provide the same protection for an insured person who is injured by an uninsured motorist as he or she would have if the uninsured motorist carried liability insurance. Moser v. Liberty Mut. Ins. Co., 1986 OK 78, ¶ 4, 731 P.2d 406, 408, Babcock v. Adkins, 1984 OK 84, ¶ 15, 695 P.2d 1340, 1343. This Court has also stated that the language from the original bill from which Title 36, Section 3636 was codified[5] shows that the legislature intends Section 3636's provisions apply to all primary automotive liability insurance policies, but not to supplemental, excess, or umbrella policies. Moser, 1986 OK 78, ¶¶ 8,9, 731 P.2d at 409, GEICO, 2005 OK 40, ¶¶ 13, 22, 115 P.3d at 859, 860.[6]

¶13 When reviewing a statute for meaning, relevant provisions must be considered together to give full force to each, if possible. Barnes v. Okla. Farm Bureau Mut. Ins. Co., 2000 OK 55, ¶ 25, 11 P.3d 162, 172. To understand Section 3636(F), we cannot take one sentence or part of a sentence out of context, but must read the provision in its entirety. Id. ¶ 26, 11 P.3d at 173. The first sentence of Section 3636(F)[7] is the general rule that applies to subrogation for UM carriers. The rest of subsection (F) provides exceptions from the first sentence and additional restriction on the subrogation allowed. For example, the third sentence[8] prevents UM carriers from using payments by the tort-feasor as a set-off from the UM coverage limits. And the fourth and fifth sentence[9] enact guidelines that become applicable if the UM carrier is notified of a tentative agreement to settle for the tort-feasor's liability limits.

¶14 The second sentence of 3636(F) states:

Provided, however, with respect to payments made by reason of the coverage described in subsection C of this section, the insurer making such payment shall not be entitled to any right of recovery against such tort-feasor in excess of the proceeds recovered from the assets of the insolvent insurer of said tort-feasor.

36 O.S.Supp. 2009, § 3636(F) (emphasis added). This exception limits the UM carrier's right to subrogation to recovery from the tort-feasor's primary automotive liability insurer only and prohibits recovery against the tort-feasor in excess of the proceeds recovered from primary insurer or their assets. This exception only applies to UM payments made because of UM coverage described in subsection (C). Subsection (C) describes tort-feasor vehicles with insolvent liability insurers and under-insured vehicles as "uninsured" for purposes of UM coverage.[10] Section 3636(C) does not contemplate excess policies in determining liability limits for whether a vehicle is under-insured. GEICO, 2005 OK 40, ¶¶ 0, 13, 22, 115 P.3d at 857, 859, 860.

¶15 As Title 36, Section 3636(F) specifically refers to subsection (C), it is clear that the insurer referred to is the same primary insurer who is either insolvent or with whom the tort-feasor is under-insured. There is no language in Section 3636(C) or (F) to indicate that the legislature contemplated UM carriers recovering from excess insurance policies of the tort-feasor. Instead, the legislature gave explicit instructions that UM carriers are not entitled to any right of recovery against the tort-feasor in excess of recovery from the insurer of the tort-feasor. Mercury argues that this exception only applies to insolvent insurers not to under-insured tort-feasors and that to apply it to both would make the word 'insolvent' superfluous. Mercury further claims that because the exception only applies to insolvent insurers, in the absence of insolvency the UM insurer may recover from the tort-feasor in excess of the proceeds from the primary insurance.

¶16 A statute must be read to make every part operative and to avoid making parts of it superfluous or useless. Moran v. City of Del City, 2003 OK 57, ¶8, 77 P.3d 588, 591. Conflicts between statutory provisions will be resolved in favor of a construction which promotes the Legislature's intent. Okla. Assoc. of Broadcasters, Inc. v. City of Norman, 2016 OK 119, ¶ 27, 390 P.3d 689, 696. An inept word choice will not be construed in a manner to defeat the obvious purpose of a legislative enactment. Zaloudek Grain Co. v. Compsource Okla., 2012 OK 75, ¶ 7, 298 P.3d 520, 523 (quoting TRW/Reda Pump v. Brewington, 1992 OK 31, ¶ 5, 829 P.2d 15, 20).

¶17 While Section 3636(C), was originally enacted with only language referring to insolvency, 1968 Okla. Sess. Laws 163-64, it was amended in 1979 to also include under-insured vehicles,1979 Okla. Sess. Laws 452-53. Then Subsection (E), now (F), was later amended in 1989 to clarify the reference to subsection (C),[11] but did not limit the reference to any specific part of subsection (C), showing a legislative intent[12] for this sentence, in what is now subsection (F), to apply to the entirety of subsection (C). 1989 Okla. Sess. Laws 211-12. Resolving the apparent conflict by having the reference in subsection (F) apply to the entirety of subsection (C) promotes the Legislature's intent and is consistent with this Court's tendency to protect the insured's right to collect from the UM carrier. Burch v. Allstate Ins. Co., 1998 OK 129, ¶ 8 n.14, 977 P.2d 1057, 1061 n.14. Further, if this Court were to find that the reference in subsection (F) did not apply to the entirety of subsection (C), that would both make the second half of subsection (C) superfluous and violate the legislative intent to provide the same protection for an insured person who is injured by an UM as he or she would have if the UM carried liability insurance.

¶18 Contrary to Mercury's claims, Raymond is not receiving a windfall here. Mercury was paid a premium for UM protection and Raymond recovered an amount not covering all of his damages within the limits of the primary liability policy and the UM policy. Raymond has also recovered an amount from the tort-feasor's other assets that, combined with the liability and UM funds, covered his damages. It would be unjust to permit Mercury to avoid its liability with its claim that the tort-feasor's other assets, that happened to be an excess liability policy, removed Mercury's liability thus denying Raymond from receiving that for which Mercury was paid a premium. Keel v. MFA Ins. Co., 1976 OK 86, ¶ 12, 553 P.2d 153, 156.

¶19 In the present case, the tort-feasors carried $1,000,000 in primary automotive liability insurance. Because Raymond's claim was clearly in excess of the liability limit, Mercury paid UM benefits under the definition of uninsured motor vehicle in Section 3636(C). We hold that under Section 3636(F), Mercury was limited to subrogation from the primary insurer and is not entitled to subrogation from any assets of the tort-feasor, including the excess liability policy.[13]

CONCLUSION

¶20 As there is no right to subrogation by an UM carrier against an under-insured tort-feasor's assets, Mercury did not have the right to subrogate the UM payment and we do not need to address the issue of attorney fees. The Court of Civil Appeals opinion is vacated and the judgment of the district court is reversed. The case is remanded with instructions to the District Court to release the $500,000 to the Appellant.

COURT OF CIVIL APPEALS' OPINION VACATED; JUDGMENT OF
DISTRICT COURT REVERSED; CAUSE REMANDED WITH INSTRUCTIONS.

KAUGER, WATT, EDMONDSON, COLBERT AND REIF, JJ. - CONCUR

COMBS, C.J. (by separate writing), GURICH, V.C.J., WINCHESTER AND WYRICK, JJ. - DISSENT

FOOTNOTES

[1] The exact amount of damages suffered by Raymond was not submitted to this Court, but was stated by Raymond as exceeding $2,000,000. It is undisputed that Raymond's injuries exceeded the combined total of BlueKnight's primary automobile liability policy of $1,000,000 and the $500,000 paid in benefits under the Mercury UM policy.

[2] In September 2012, both Taylor's estate and CompSource Oklahoma filed motions to intervene. On November 20, 2012 and February 14, 2013, respectively, Taylor's and CompSource Oklahoma's motions to intervene were granted. The actions were dismissed with prejudice in December 2013 and February 2015 respectively.

[3] Both parties state the confidential settlement amount was inclusive of Mercury's disputed subrogation claim. Neither the settlement agreement nor the insurance contracts were included in any of the materials to this Court.

[4] A. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection B of this section.

B. The policy referred to in subsection A of this section shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. . . . . 36 O.S.Supp. 2009, § 3636(A),(B).

[5] "An Act relating to insurance; requiring that an "uninsured motorist clause" be contained in every automobile liability insurance policy; prescribing the limits of liability of such coverage; providing for an insolvency clause; providing exceptions; defining terms . . . ." 1968 Okla. Sess. Laws 163.

[6] Umbrella policies are "at most tangentially related to automobile liability"and thus do not further the intent of the UM statute. Moser, 1986 OK 78, ¶ 10 n. 16, 731 P.2d at 410, GEICO, 2005 OK 40, ¶ 13, 115 P.3d at 859.

[7] In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer.

36 O.S.Supp. 2009, § 3636(F).

[8] "Provided further, that any payment made by the insured tort-feasor shall not reduce or be a credit against the total liability limits as provided in the insured's own uninsured motorist coverage." 36 O.S.Supp. 2009, § 3636(F).

[9] Provided further, that if a tentative agreement to settle for liability limits has been reached with an insured tort-feasor, written notice shall be given by certified mail to the uninsured motorist coverage insurer by its insured. Such written notice shall include:
1. Written documentation of pecuniary losses incurred, including copies of all medical bills; and
2. Written authorization or a court order to obtain reports from all employers and medical providers. Within sixty (60) days of receipt of this written notice, the uninsured motorist coverage insurer may substitute its payment to the insured for the tentative settlement amount. The uninsured motorist coverage insurer shall then be entitled to the insured's right of recovery to the extent of such payment and any settlement under the uninsured motorist coverage. If the uninsured motorist coverage insurer fails to pay the insured the amount of the tentative tort settlement within sixty (60) days, the uninsured motorist coverage insurer has no right to the proceeds of any settlement or judgment, as provided herein, for any amount paid under the uninsured motorist coverage.

36 O.S.Supp. 2009, § 3636(F).

[10] For the purposes of this coverage the term "uninsured motor vehicle" shall include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency. For the purposes of this coverage the term "uninsured motor vehicle" shall also include an insured motor vehicle, the liability limits of which are less than the amount of the claim of the person or persons making such claim, regardless of the amount of coverage of either of the parties in relation to each other.

36 O.S.Supp. 2009, § 3636(C) (emphasis added).

[11] Changed language from "subsection (C) above" to "subsection C of this section." 1989 Okla. Sess. Laws 212.

[12] Legislative silence may be considered as giving rise to an implication of legislative intent. Zaloudek Grain Co., 2012 OK 75, ¶ 7, 298 P.3d at 523

[13] Mercury claims that an UM carrier can recover from "any available assets of the tortfeasor." Barnes, 2000 OK 55, ¶ 29, 11 P.3d at 173. While our holding here may appear to be contradictory with this Court's statements that the UM insurer can recoup its loss from the tort-feasor, Id., it can be reconciled by looking at the context of the statement. In Barnes, this Court stated that had the insurer properly substituted the tentative settlement, the UM insurer would have been subrogated for the amount the tort-feasor's insurance would pay and would have also been able to recoup the amount they contracted to provide in UM coverage from the assets of the tort-feasor. Id. This is an application of the last exception in Section 3636(F), which allows the UM carrier to become entitled to the insured's right of recovery if they substitute payment for the tentative settlement agreement. This Court also noted in Barnes that the other UM carrier there concluded that the tort-feasor had no assets other than the liability policy and decided not to substitute payment for the settlement, waiving any subrogation rights for its UM payment. Barnes, 2000 OK 55, ¶ 16, 11 P.3d at 169. Here, Mercury notes that Defendants had assets beyond their primary liability policy, in the form of the excess insurance, but did not substitute payment for the settlement such that they could become entitled to the right to recover from those assets. Mercury also argues that the settlement provision is not applicable here because the tort-feasor did not make a settlement offer of the combined $41,000,000 limits of the primary automotive liability policy and excess liability policy. This Court has held that the legislature did not intend Section 3636 to include supplemental or excess policies elsewhere in the statute, Moser, 1986 OK 78, ¶¶ 8,9, 731 P.2d at 409, GEICO, 2005 OK 40, ¶¶ 13, 22, 115 P.3d at 859, 860, and there is nothing to indicate that the "liability limits" in this exception are any different. The liability limits referenced by the settlement portion of Section 3636 are the automotive liability limits used in the rest of the statute.

COMBS, C.J., with whom Gurich, V.C.J., Winchester and Wyrick, JJ., join, dissenting:

¶1 The question presented in this matter is whether an uninsured motorist insurance carrier, American Mercury Insurance Company (Mercury), is entitled to subrogation against the under-insured tortfeasor's assets beyond the amount paid by the tortfeasor's primary liability insurer, including excess secondary insurance coverage. Based on its interpretation and analysis of 36 O.S. 2011 § 3636, the majority concludes Mercury is not entitled to subrogation beyond the amount recovered from the primary liability insurer. Respectfully, I disagree.

I.

THE UNINSURED MOTORIST STATUTE - - TITLE 36 O.S. 2011 § 3636

¶2 The controlling statutory provision in this matter is 36 O.S. 2011 § 3636.[1] Specifically, at issue is the relationship between Section 3636(C) and (F) and the effect the two subsections have on subrogation. Title 36 O.S. 2011 § 3636(C) defines the term "uninsured motor vehicle" and provides:

C. For the purposes of this coverage the term "uninsured motor vehicle" shall include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency. For the purposes of this coverage the term "uninsured motor vehicle" shall also include an insured motor vehicle, the liability limits of which are less than the amount of the claim of the person or persons making such claim, regardless of the amount of coverage of either of the parties in relation to each other.

The applicability of the second sentence of 36 O.S. 2011 § 3636(C) to the facts of this cause is undisputed, and the only question is to what extent Mercury is entitled to subrogation for its payment under the UM provision of the policy.

¶3 Title 36 O.S. 2011 § 3636(F) concerns subrogation, and refers back to Section 3636(C). Title 36 O.S. 2011 § 3636(F) provides in pertinent part:

F. In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer. Provided, however, with respect to payments made by reason of the coverage described in subsection C of this section, the insurer making such payment shall not be entitled to any right of recovery against such tort-feasor in excess of the proceeds recovered from the assets of the insolvent insurer of said tort-feasor. Provided further, that any payment made by the insured tort-feasor shall not reduce or be a credit against the total liability limits as provided in the insured's own uninsured motorist coverage.

II.

TITLE 36 O.S. 2011 § 3636(F) PERMITS SUBROGATION BY AN
UNINSURED MOTORIST INSURANCE CARRIER AGAINST THE
TORTFEASOR IN THIS CIRCUMSTANCE

¶4 Mercury argues it is entitled to subrogation pursuant to the first sentence of 36 O.S. 2011 § 3636(F). I agree with the majority that the first sentence of 36 O.S. 2011 § 3636(F) provides for subrogation generally. However, I disagree with the majority's conclusion that that the second sentence of 36 O.S. 2011 § 3636(F) is an exception that applies under the facts of this cause. The second sentence of Section 3636(F) specifically provides:

Provided, however, with respect to payments made by reason of the coverage described in subsection C of this section, the insurer making such payment shall not be entitled to any right of recovery against such tort-feasor in excess of the proceeds recovered from the assets of the insolvent insurer of said tort-feasor.

Because Section 3636(F) specifically references payments made pursuant to Section 3636(C), the majority concludes subrogation against the tortfeasor beyond the amount provided by the liability insurer is prohibited under both uninsured motorist scenarios described in Section 3636(C): 1) where the liability insurer is unable to make full payment due to insolvency; and 2) where the motor vehicle has insufficient liability insurance to equal the claim.

¶5 The majority notes that originally Section 3636(C) only referenced the insolvent insurer scenario, and did not provide for an underinsured vehicle situation like the one central to this cause. [2] According to the majority's analysis, this explains why the second sentence of 36 O.S. 2011 § 3636(F) specifically mentions insolvent insurers. Accordingly, the majority concludes the Legislature's subsequent amendment of Section 3636(C) to include insufficient liability coverage, with no change to Section 3636(F), is indicative of legislative intent to apply the second-sentence limitation in Section 3636(F) to both scenarios in Section 3636(C).

¶6 The result of this line of reasoning is the rule the majority sets out in ¶15 of the opinion: "UM carriers are not entitled to any right of recovery against the tort-feasor in excess of recovery from the insurer of the tort-feasor." This would include another excess policy, as exists under the facts of this cause. This rule is not in accord with: 1) a plain reading of the statute's language; 2) the principles behind equitable subrogation; and 3) this Court's prior case law.

¶7 First, the majority's interpretation would make the reference to "insolvent insurer" in the second sentence of Section 3636(F) superfluous.[3] Had the Legislature intended the restriction to apply to the underinsured motorist scenario it added to Section 3636(C) in 1979, it could have also amended the second sentence of Section 3636(F) to encompass both situations (a vehicle with an insolvent insurer AND an underinsured vehicle). The Legislature did not do so, and therefore the plain language of the second sentence of Section 3636(F) indicates its restriction on subrogation applies only to situations where there is an insolvent insurer.

¶8 Second, such an interpretation not only fits the plain language of the statute, but is also in accord with the purpose behind equitable subrogation:

The goal of equitable subrogation is to place the entire burden for a loss on the party who is ultimately responsible for it and by whom it should have been discharged, and to relieve entirely the insurer who indemnified the loss and who is not responsible for paying it.

U.S. Fidelity and Guar. Co. v. Federated Rural Elec. Ins. Corp., 2001 OK 81, ¶14, 37 P.3d 825. See Republic Underwriters Ins. Co. v. Fire Ins. Exchange, 1982 OK 67, ¶6, 655 P.2d 544.

Simply put, a tortfeasor's liability insurer being unable to pay due to insolvency is not the tortfeasor's fault. In that context, it makes sense to limit subrogation to only the assets of the insolvent insurer of the tortfeasor, which is precisely what the second sentence of 36 O.S. 2011 § 3636(F) does. On the other hand, failure to carry sufficient liability insurance to meet a claim can easily be said to be a result of the tortfeasor's own poor planning and bad judgment. In that situation, allowing subrogation of other assets of the tortfeasor directly, such as an excess insurance policy, by the underinsured motorist carrier makes sense given the principles of equitable subrogation.

¶9 Third, the above principles are supported by this Court's prior case law. Porter v. MFA Mut. Ins. Co., 1982 OK 23, 643 P.2d 302, concerned an underinsured motorist carrier's right to subrogation and whether that right was eliminated when its insured settled with and released the tortfeasor. That cause was governed by 36 O.S. Supp. 1976 § 3636, and at that time the Legislature had not yet amended Section 3636(C) to include the underinsured motorist scenario. However, this Court determined that the second sentence in the subrogation subsection - -which is substantially unchanged- -was not applicable when there was no insolvent insurer. Porter, 1982 OK 23, ¶¶12-13. Specifically, the Court stated:

MFA contends that the statute requiring uninsured motorist coverage, 36 O.S. § 3636 (E), specifically allows for subrogation rights. We agree with MFA's contention that said statute specifically recognizes the rights of MFA as the uninsured motorist insurer to recoupment of its loss from the third party tortfeasor.

Porter, 1982 OK 23, ¶12 (emphasis added).

The Legislature's subsequent amendment of Section 3636(C) does not alter this rule, given the Legislature's decision to leave unchanged the language referring specifically to insolvent insurers in the second sentence of Section 3636(F).

¶10 Further, this Court has referenced Porter and continued to recognize an underinsured motorist carrier's right to subrogation against the tortfeasor in a line of subsequent cases, all decided after Section 3636(C) was amended to include the underinsured motorist contingency. For example, in Frey v. Independence Fire and Cas. Co., 1985 OK 25, 698 P.2d 17, this Court again examined whether an underinsured motorist carrier's insured, through his actions, destroyed the UM carrier's right to subrogation against the tortfeasor; a right that would not exist in the first place under the majority's interpretation of the statute but which this Court at the time explicitly recognized. The Court noted: "[t]he terms of 36 O.S. 1981 § 3636(E), as well as the so-called insurer's trust agreement included in the insured's policy, provide in specific language that the insurer shall have a subrogation claim." Frey, 1985 OK 25, ¶10.

¶11 Subrogation rights and the application of Porter were also discussed by this Court in Sexton v. Continental Cas. Co., 1991 OK 84, 816 P.2d 1135 and Robertson v. U.S. Fidelity & Guar Co., 1992 OK 113, 836 P.2d 1294. None of these cases discussed a limitation of the subrogation right to only the proceeds recovered from the tortfeasor's primary insurer or its assets, precisely because none of the fact patterns involved an insolvent insurer and so the second sentence of Section 3636(F) was not applicable.

¶12 By way of another example, in Burch v. Allstate Ins. Co., 1998 OK 129, ¶18, 977 P.2d 1057, this Court explained:

... the UM carrier is directly and primarily liable to its insured for the entire loss to be indemnified, except where the insured affirmatively destroys the insurer's subrogation right, does not make the UM carrier the final indemnitor for the injured party's loss. The UM carrier is statutorily subrogated to the rights of its insured against the tortfeasor and the tortfeasor's liability carrier, if any there be, and must seek recovery of paid indemnity through an exercise of its right to subrogation. (Emphasis added).

This holding does not suggest that the UM carrier's right of subrogation is limited solely to the amount recovered from the primary liability insurer. Rather, it goes so far as to indicate that the right of subrogation exists against the tortfeasor, period.

¶13 In short, nothing in this Court's prior case law or in the language of 36 O.S. 2011 § 3636 suggests that an underinsured motorist carrier's statutory right to subrogation against the tortfeasor is limited to the amount recovered from the liability insurer of the tortfeasor in situations where there is insufficient liability coverage rather than an insolvent liability insurer. Rather, such a rule is counter to the plain language of 36 O.S. 2011 § 3636 as well as the principles underlying equitable subrogation. For these reasons, I respectfully dissent.

FOOTNOTES

[1] Section 3636 was last amended in 2014 by SB 991, 2014 Okla. Sess. Laws, c. 307, § 1 (eff. Nov. 1, 2014). Prior to that, it was amended in 2009 by SB 1022, 2009 Okla. Sess. Laws, c. 176, § 31 (eff. Nov. 1, 2009). The collision and underlying injuries occurred on July 6, 2012. Accordingly, 36 O.S. 2011 § 3636 is the controlling version of the statute.

[2] Majority Opinion at ¶17. See HB 802, 1968 Okla. Sess. Laws, c. 106, § 2.

[3] Title 36 O.S. 2011 § 3636(F) provides in pertinent part:

Provided, however, with respect to payments made by reason of the coverage described in subsection C of this section, the insurer making such payment shall not be entitled to any right of recovery against such tort-feasor in excess of the proceeds recovered from the assets of the insolvent insurer of said tort-feasor. (Emphasis added).






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1986 OK 78, 731 P.2d 406, 57 OBJ 3019, Moser v. Liberty Mut. Ins. Co.
Discussed at Length
 1991 OK 84, 816 P.2d 1135, 62 OBJ 2641, Sexton v. Continental Cas. Co.
Discussed
 1992 OK 31, 829 P.2d 15, 63 OBJ 682, TRW/Reda Pump v. Brewington
Discussed
 1992 OK 113, 836 P.2d 1294, 63 OBJ 2116, Robertson v. U.S. Fidelity & Guar. Co.
Discussed
 2001 OK 81, 37 P.3d 825, 72 OBJ 2947, UNITED STATES FIDELITY & GUARANTY CO. v. FEDERATED RURAL ELECTRIC INS. CORP.
Discussed
 1919 OK 147, 182 P. 247, 72 Okla. 308, BLEVINS v. W. A. GRAHAM CO.
Discussed
 2003 OK 57, 77 P.3d 588, MORAN v. CITY OF DEL CITY
Discussed
 2003 OK 96, 81 P.3d 652, FULSOM v. FULSOM
Discussed
 2004 OK 84, 102 P.3d 670, HEAD v. McCRACKEN
Discussed at Length
 2005 OK 40, 115 P.3d 856, GEICO GENERAL INSURANCE CO. v. NORTHWESTERN PACIFIC INDEMNITY CO.
Discussed at Length
 2012 OK 75, 298 P.3d 520, ZALOUDEK GRAIN COMPANY v. COMPSOURCE OKLAHOMA
Discussed at Length
 1976 OK 86, 553 P.2d 153, KEEL v. MFA INSURANCE COMPANY
Discussed
 2013 OK 95, 318 P.3d 1105, CATTLEMEN'S STEAKHOUSE, INC. v. WALDENVILLE
Discussed
 2015 OK 64, 360 P.3d 499, BALL v. MULTIPLE INJURY TRUST FUND
Discussed
 2016 OK 119, 390 P.3d 689, OKLAHOMA ASSOC. OF BROADCASTERS, INC. v. CITY OF NORMAN
Discussed
 1982 OK 23, 643 P.2d 302, Porter v. MFA Mut. Ins. Co.
Discussed at Length
 1982 OK 67, 655 P.2d 544, Republic Underwriters Ins. Co. v. Fire Ins. Exchange
Discussed
 1998 OK 129, 977 P.2d 1057, 70 OBJ 46, Burch v. Allstate Insurance Company
Discussed at Length
 2000 OK 55, 11 P.3d 162, 71 OBJ 3219, BARNES v. OKLAHOMA FARM BUREAU MUTUAL INS. CO.
Discussed at Length
 1984 OK 84, 695 P.2d 1340, Babcock v. Adkins
Discussed
 1985 OK 25, 698 P.2d 17, Frey v. Independence Fire and Cas. Co.
Discussed at Length
Title 36. Insurance
 Cite
Name
Level

 36 O.S. 3636, Uninsured Motorist Coverage
Discussed at Length